IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES KIRKHAM, on behalf of    :
himself and all others similarly    :
situated, and                  :     Civil Action No. 2:23-CV-3303-WB
                             :
MATTHEW SESSOMS, on behalf of  :     Jury Trial Demanded
himself and all others similarly    :
situated,                        :
                             :
            Plaintiffs,    :
                             :
v.                             :
                             :
TAXACT, INC.,               :
                             :
           Defendant.   :
                             :

**<u>AMENDED CLASS ACTION COMPLAINT</u>**

James Kirkham and Matthew Sessoms ("Plaintiffs"), individually, and on behalf of all others similarly situated, by and through the undersigned counsel, hereby submit the following Amended Class Action Complaint and Demand for Jury Trial against TaxAct, Inc. ("TaxAct") and allege the following on information and belief, which is based on the investigation of counsel and the congressional report, "Attacks on Tax Privacy: How the Tax Prep Industry Enabled Meta to Harvest Millions of Taxpayers' Sensitive Data"[1]:

---

[1] https://www.warren.senate.gov/imo/media/doc/Attacks%20on%20Tax%20Privacy%20Report_7.12.2023.pdf (last accessed July 20, 2023).

## INTRODUCTION

1.      This is a class action lawsuit brought on behalf of Pennsylvania residents against TaxAct for sharing sensitive taxpayer data with Meta Platforms, Inc. ("**Meta**") and Google LLC and its affiliates ("**Google**"), as well as other third-parties, without the taxpayers' knowing and voluntary consent.

2.      The confidential tax return information TaxAct unlawfully intercepted, disclosed, disseminated, and transmitted to third-parties, including Meta and Google, included taxpayers' "full names, email, country, state, city, zip codes, phone numbers, gender, date of birth, first names of dependents, buttons that were clicked, names of text-entry forms that the taxpayer navigated to (both of which could indicate, for example, whether taxpayers were eligible for certain deductions of exemptions), web browser used, year of return, and website referral, if any."[2]

3.      An investigative journalism website, The Markup, first disclosed in 2022 that TaxAct and several other major tax preparation companies unlawfully used "pixels"—a piece of code that can be installed on websites and which can send massive amounts of user data to technology companies—to intercept and disclose tax return information to Meta and Google. The report also revealed that TaxAct used Google Analytics, which is a data-tracking tool offered by Google to the same end.

4.      Since The Markup first published its report, a Congressional investigation has confirmed that TaxAct's use of pixels and Google Analytics has resulted in the disclosure, use

---

[2] *Id.*

2

dissemination, transmission, and release of confidential tax return information to Meta and Google.

*5.*     By intercepting, using, and sharing sensitive taxpayer data, including tax return information, with Meta and Google, TaxAct violated 26 U.S.C. §§ 6103 and 7431(a)(2) as well as the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("Pennsylvania Wiretap Act"), 18 Pa. C.S. § 5701, *et seq.*

## JURISDICTION

6.     The Court of Common Pleas has jurisdiction over this action, and venue is proper in Philadelphia County of the Commonwealth of Pennsylvania based on TaxAct's substantial conduct of business and operations in the Commonwealth of Pennsylvania and in the City of Philadelphia, including the preparation and filing of federal, state, and local tax returns in Philadelphia County.

7.     On August 24, 2023, TaxAct filed a Notice of Removal pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1446, and 1453, thereby removing this action to this Court.

## PARTIES

8.     Plaintiff Kirkham is a natural person, a citizen of the Commonwealth of Pennsylvania, and resides in Lawrence County, Pennsylvania at 211 West Moody Ave., Apt. 125, New Castle, PA 16101.

9.     Plaintiff Kirkham used TaxAct's online tax preparation and filing services in 2021.

10.     Plaintiff Kirkham expected and believed that TaxAct would treat his tax return information and personal identifiers as confidential and protect it from disclosure to third-parties.

3

11. Plaintiff Kirkham did not knowingly and voluntarily consent to TaxAct's interception, use, and disclosure of his confidential tax return preparation information. Nor did Plaintiff Kirkham knowingly and voluntarily consent to the disclosure, dissemination, and sharing of his confidential tax return information with third-parties and their resulting use of his confidential tax return information.

12. Plaintiff Kirkham expected and believed that TaxAct would treat his tax return information and personal identifiers as confidential and protect it from disclosure to third-parties.

13. Plaintiff Kirkham did not see, understand, or agree to be bound by an arbitration agreement or any terms or conditions on TaxAct's website.

14. Plaintiff Matthew Sessoms is a natural person, a citizen of the Commonwealth of Pennsylvania, and resides in Westmoreland Pennsylvania at 241 Second St., Slickville, PA 15684.

15. Plaintiff Sessoms' spouse used TaxAct's online preparation and filing services to prepare and file joint tax returns with Plaintiff Sessoms from 2017 to 2022.

16. Plaintiff Sessoms did not access or use TaxAct's website.

17. Plaintiff Sessoms did not see, understand, or agree to be bound by an arbitration agreement or any terms or conditions on TaxAct's website.

18. Plaintiff Sessoms did not knowingly and voluntarily consent to TaxAct's interception, use, and disclosure of his confidential tax return preparation information. Nor did Plaintiff Sessoms knowingly and voluntarily consent to the disclosure, dissemination, and sharing of his confidential tax return information with third-parties and their resulting use of his confidential tax return information.

4

19.     Plaintiff Kirkham expected and believed that TaxAct would treat his tax return information and personal identifiers as confidential and protect it from disclosure to third-parties.

20.     Defendant TaxAct, Inc. is incorporated in Iowa with its principal place of business located at 1425 60th St. NE, Cedar Rapids, Iowa 52402-1284.

21.     TaxAct, at all times material herein, further acted by and through its respective servants, employees, officers, directors and agents, actual, apparent or ostensible, any and all of whom were then and there acting within the course and scope of their employment, duties, or authority, actual, apparent or ostensible.

## FACTUAL ALLEGATIONS

**A.  TaxAct assists taxpayers in preparing and filing their federal, local and state taxes.**

22.     TaxAct purports to "help consumers prepare their tax returns" with services including "federal and state DIY tax preparation, tax planning tools, and access to tax advice."[3]

23.     TaxAct developed, maintained, offered and operated online tax preparation software on the internet at *http://www.taxact.com* for the purpose of assisting taxpayers in preparing and filing federal, state, and local tax returns.

24.     For fiscal year 2021, TaxAct prepared 3.2 million U.S. tax returns, which generated $227 million in revenue.[4]

---

[3] https://www.taxact.com/?version=071823trh (last accessed July 24, 2023).

[4] Blucora, Inc., "2021 Annual Report to Stockholders," Form 10-k, https://www.blucora.com/node/31081/html (last accessed July 24, 2023).

**B. TaxAct intercepted, disclosed, disseminated, transmitted, and released confidential tax return information to Meta and Google.**

25.    Through computer code inserted in its online applications—the pixels—TaxAct routinely and systematically intercepted, disclosed, disseminated, transmitted, and released confidential tax return preparation information to Meta, Google, and other third-parties.

26.    Pixels are not only "invisible" to consumers but are designed so that "[t]raditional controls such as blocking third party cookies may not entirely prevent pixels from collecting and sharing information."[5]

27.    Pixels are lines of computer code that, once inserted into a website's underlying operating coding, collect and send personal information of the website's users to technology companies, such as Meta and Google or such other persons the coding instructs the information to be sent to.[6]

28.    Once placed on a website, a pixel downloads more code from the associated technology company—*i.e.*, Meta or Google—which in turn gathers valuable information about the website's users, including their activity.

29.    The information collected through pixels allows advertisers to understand consumers' behaviors and shopping patterns. It also allows advertisers to measure the performance of their websites and advertising campaigns and build an audience base for future targeted advertising.

---

[5] Federal Trade Commission, "Lurking Beneath the Surface: Hidden Impacts of Pixel Tracking," https://www.ftc.gov/policy/advocacy-research/tech-at-ftc/2023/03/lurking-beneath-surface-hidden-impacts-pixel-tracking (last accessed October 5, 2023).

[6] Although Google does not refer to its Google Analytics coding as pixels, for the sake of simplicity, the term pixels as used herein refers to Google Analytics as well.

30.     According to the Federal Trade Commission, companies, like TaxAct, can monetize their use of pixels in several ways:

> One way to monetize pixel tracking is for companies to use the tracking data collected to improve the company's own marketing campaigns. The data can be used to target more specific audiences with ads and other marketing messages. Another is that companies can monetize the data collected by further optimizing their own ad targeting systems and charging other companies to use its advertising offerings.[7]

31.     Meta offers its Pixel to companies, including TaxAct, "to make sure [their] ads are shown to the right people" and "drive more sales."[8] Meta's Pixel is made available to third-parties, like TaxAct, for free with the recommendation that the developer add the Pixel "between the opening and closing <head> tags on every page where [they] will be tracking website visitor actions."[9] Meta recommends that its Pixel be inserted in this way to "reduce the chance" that consumers can protect themselves through the use of ad-blocking technologies and to execute the code sooner, thereby increasing the chance that visitor information is tracked and collected.[10]

32.     Once Meta's Pixel is enabled on a website, the Pixel collects information about the user's activity and matches it with the user's unique "c_user cookie."[11] The "c_user cookie" enables Meta to record and organize user's activities and communications, which it can attribute

---

[7] *Id.*

[8] The Markup, "Applied for Student Aid Online? Facebook Saw you," Surya Mattu and Collin Lecher, https://themarkup.org/pixel-hunt/2022/04/28/applied-for-student-aid-online-facebook-saw-you (last accessed July 20, 2023).

[9] Mparticle, "Google Tag Manager vs. Google Analytics: What are the Key Differences?", https://www.mparticle.com/blog/google-tag-manager-vs-google-analytics/ (last accessed July 20, 2023).

[10] Google Analytics Help, "Set up Analytics for a website (Universal Analytics)", https://support.google.com/analytics/answer/10269537?hl=en (last accessed July 20, 2023).

[11] Google: The Keyword, "Some facts about Google Analytics data privacy," https://blog.google/around-the-globe/google-europe/google-analytics-facts/ (last accessed (July 20, 2023).

to the individual users. The "c_user cookie" thus allows Meta to effectively create a "dossier" for each individual.[12]

33.     Meta warns companies that choose to embed pixels into their websites—like TaxAct has done—that it can match the data it receives with the consumer's actual name and Facebook account.[13]

34.     Google's pixel is part of its Google Analytics product, which Google uses to provide its partners with the opportunity to "[u]nderstand how [their] customers interact across their sites and apps," and "anticipate future customer actions[.]"[14]

35.     According to the Congressional report, "Attacks on Privacy,"[15] TaxAct has confirmed it implemented the Meta Pixel in 2018 and has been using Google Analytics since approximately 2014.

36.     TaxAct revealed to Congressional investigators that the "Meta Pixel on their website collected far more information than was previously reported, including full names, email, country, state, city, zip codes, phone numbers, gender, date of birth, first names of

---

[12] Google Analytics Help, "Link/unlink Google Ads and Analytics," https://support.google.com/analytics/answer/1033961?hl=en#zippy=%2Cin-this-article (last accessed July 20, 2023); Google Analytics Help, "[GA4] Introduction to audiences in Google Analytics," https://support.google.com/analytics/answer/12799087?hl=en (last accessed July 20, 2023).

[13] Facebook, "Get Started," https://developers.facebook.com/docs/meta-pixel/get-started/ (last accessed October 5, 2023).

[14] Google Analytics Help, "Set up Analytics for a website (Universal Analytics)", https://support.google.com/analytics/answer/10269537?hl=en (last accessed July 20, 2023).

[15] "Attacks on Tax Privacy: How the Tax Prep Industry Enabled Meta to Harvest Millions of Taxpayers' Sensitive Data," https://www.warren.senate.gov/imo/media/doc/Attacks%20on%20Tax%20Privacy%20Report_7.12.2023.pdf (last accessed July 20, 2023).

dependents, buttons that were clicked, names of text-entry forms that the taxpayer navigated to (both of which could indicate, for example, whether taxpayers were eligible for certain deductions or exemptions), web browser used, year of return, and website referral, if any." TaxAct further revealed to Congressional investigators that Meta Pixel is a "business tool" and that it had shared with Meta "taxpayers' number of depends, number of W2s, AGI (rounded to the nearest thousand), and federal tax owed, and refund amount (each one rounded to the nearest hundred)."[16]

37.     On information and belief, it is understood that when a consumer visited www.tacact.com, the Meta Pixel caused the consumer's personal identifiers, including IP addresses and the c_user, _fr, _dar, and _fpb cookies, to be automatically transmitted to Meta. By using the c_user cookie, Meta could then match the consumer's data with their real name, phone numbers, IP addresses. TaxAct also configured the Meta Pixel on its website to not only transmit the "automatic events" that Meta Pixels collect, but also "custom events," such as the consumer's adjusted gross income, filing status, number of dependents, and refund amounts. TaxAct further configured the Meta Pixel on its website to use "automatic advanced matching," which is a feature that scans forms on a website to look for fields that may contain personally identifiable information, which would also be transmitted to Meta. Having opted to use the automatic advanced matching feature, TaxAct additionally intercepted, disclosed, disseminated, and transmitted the names and phone numbers of Plaintiffs and the Class Members, as well as their dependents.

---

[16] *Id.*

38.     TaxAct intercepted, disclosed, disseminated, and transmitted to Meta Plaintiffs and the Class Members' confidential tax return information and their personal identifiers.

39.     TaxAct indicated that through Google Analytics, Google collected "substantially similar" information.[17]

40.     On information and belief, it is understood that TaxAct's use of Google Analytics' tracking pixels on www.taxact.com resulted in the interception and disclosure of Plaintiffs and the Class Members' confidential tax return information to Google and other third-parties, including whether they were filing as a single or joint filer, the types of forms filed, whether they were submitted federal and state tax returns, their income, and the refund amounts.

41.     TaxAct disclosed Plaintiffs and the Class Members' confidential tax return information to permit it to improve its marketing and advertising.

42.     These tracking tools—being integrated into the website's coding—were invisible to Plaintiffs and the Class Members.

43.     TaxAct did not warn Plaintiffs and the Class Members that it embedded pixels into its website and that their confidential tax return information and personal identifiers would be disclosed to third-parties.

44.     Plaintiffs and the Class Members did not know or have reason to suspect that TaxAct would embed hidden pixels in its website's coding that would collect and transmit Plaintiffs and the Class Members' confidential tax return information and personal identifiers.

---

[17] *Id.*

45.     Because Plaintiffs and the Class Members did not know and could not have known that TaxAct embedded hidden pixels in its website's coding, Plaintiffs and the Class Members could not and did not consent to TaxAct's conduct, including its interception, disclosure, dissemination, and transmission of their confidential tax return information and personal identifiers to third-parties.

**C. TaxAct violated federal law by sharing taxpayer return information with Meta and Google without valid taxpayer consent.**

46.     TaxAct's privacy and data protection policies and practices do not comply with federal law, which mandates that tax "returns and return information shall be confidential." 26 U.S.C. § 6103.

47.     The Internal Revenue Code prohibits tax return preparers from disclosing "any information furnished to him for, or in connection with, the preparation of any such return" or use "any such information for any purpose other than to prepare, or assist in preparing, any such return." 26 U.S.C. § 7216(a).

48.     Under federal law, "tax return preparer" is defined under 26 C.R.R. § 301.7216-1 as "[a]ny person who is engaged in the business of preparing or assisting in preparing tax returns," including "[a]ny person who is engaged in the business of providing auxiliary services in connection with the preparation of tax returns, including a person who develops software that is used to prepare or file a tax return and any Authorized IRS e-file Provider…"

49.     Under 26 C.R.R. § 301.7216-1, TaxAct is a "tax return preparer" as it was at all relevant times engaged in the business of providing auxiliary services in connection with the preparation of tax returns as a developer, owner, and operator of software used to prepare and

file tax returns. As a "tax return preparer", TaxAct is subject to federal laws governing the use of confidential tax return information.

50.     Pursuant to 26 C.F.R. § 301.7216-1(b)(3), "tax return information" means "any information, including, but not limited to, a taxpayer's name, address, or identifying number, which is furnished in any form or manner for, or in connection with, the preparation of a tax return of the taxpayer." This includes information that "the taxpayer would not have furnished … to the tax return preparer but for the intention to engage … the tax return preparer to prepare the tax return."

51.     The definition of "tax return information" is intentionally broad to "provide taxpayers with the most protection."[18] Given this broad scope, all the information provided by taxpayers to TaxAct would qualify as "tax return information."

52.     The "use" of taxpayer return information includes "any circumstance in which a tax return preparer refers to, or relies upon, [tax return information] as a basis to take or permit an action." 26 C.F.R. § 301.7216-1(b)(4).

53.     "Disclosure" of tax return information refers to "the act of making [tax return information] known to any person in any manner whatsoever." 26 C.F.R. § 301.7216-1(b)(5).

54.     As "disclosure" and "use" are broadly defined, when TaxAct shared taxpayer return information with Meta and Google, it was both a "use" and "disclosure" of the information under the federal regulations.

---

[18] Procedurally Taxing, "The Facebook Pixel and Unauthorized Use and Disclosure of Tax Return and Tax Return Information," Nina Olson, https://procedurallytaxing.com/the-facebook-pixel-and-unauthorized-use-and-disclosure-of-tax-return-and-tax-return-information/ (last accessed July 20, 2023).

55.     Treasury Regulation § 301.7216-3 authorizes tax return preparers to disclose or use taxpayer return information only with the consent of the taxpayer and only under certain narrowly-prescribed circumstances.

56.     The regulation states that "a tax return preparer may not disclose or use a taxpayer's tax return information prior to obtaining a written consent from the taxpayer," which must be "knowing and voluntary." 26 C.F.R. § 301.7216-3(a)(1). Under that regulation, if a tax return preparer conditions the use of their services on the taxpayer giving consent, the consent is considered involuntary.

57.     For consent to be valid, six conditions must be met: (1) the consent must include the name of the tax return preparer and the name of the taxpayer; (2) the consent must identify the purpose of the disclosure and the intended recipients; (3) the consent must describe the particular use authorized; (4) the consent must specify the tax return information to be disclosed; (5) the consent must be signed and dated by the taxpayer; and (6) the consent must specify a duration of time where it is valid—if no time is specified, then the consent is limited to one year. 26 C.F.R. § 301.7216-3(a), -(b).

58.     TaxAct did not satisfy the conditions set out in the preceding paragraph.

59.     TaxAct's website does not prompt users to sign or date a consent form for the disclosure of tax return information. Nor does its Privacy Statement identify Meta as a recipient of tax return information or describe each particular use authorized or the precise tax return information to be disclosed.

60.     TaxAct thus failed to obtain valid consent from taxpayers before sharing their tax return information with Meta and Google and/or before using the tax return information for non-preparation purposes.

### EQUITABLE TOLLING OF STATUTES OF LIMITATIONS, <u>CONCEALMENT, AND ESTOPPEL</u>

61.     Each unauthorized transmission of Plaintiffs and the Class Members' confidential tax return information constitutes a separate act, which triggers anew any statutes of limitations.

62.     Any applicable statute of limitations have been tolled by the (1) the discovery doctrine as Plaintiffs and the Class Members could not reasonably have discovered TaxAct's conduct, including the use of unseen computer code to intercept and distribute their taxpayer return information; and the (2) fraudulent concealment doctrine due to TaxAct's knowing, purposeful, and active concealment of all facts alleged herein, including the clandestine incorporation and use of pixels to impermissibly share taxpayer return information.

63.     With respect to its taxpayer clients, TaxAct had exclusive knowledge that its website and online applications incorporated pixels and other tracking tools, which information it failed to disclose to Plaintiff and the Class Members.

64.     TaxAct had a duty to disclose to its tax return preparation clients the nature, significance, and consequences of their collection, treatment and disclosure of taxpayer tax return information, including that pixels were present upon the website and being used to share such confidential information with Meta and Google. *See* 26 C.F.R. § 301.7216-3(a), -(b). As TaxAct has not conceded, acknowledged, or otherwise indicated to its customers and other website visitors that it has disclosed and released confidential tax return information without valid consent, it is estopped from relying on any statute of limitations.

## CLASS ACTION ALLEGATIONS

65.     Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Federal Rule of Civil Procedure 23 (and should this matter be remanded, Rule 1701 *et seq.* of the Pennsylvania Rules of Civil Procedure). This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Federal Rule of Civil Procedure 23(a) (and also Rule 1702 of the Pennsylvania Rules of Civil Procedure).

66.      Plaintiffs bring this class action on behalf of themselves and a class of persons (the "Class") defined as follows:

> All persons who used TaxAct's online tax preparation software from within Pennsylvania to prepare and/or file a tax return during the time that Meta Pixel or Google Analytics coding was present and active on TaxAct's website and/or its other online mobile and desktop applications up and until November 23, 2022.

67.     Plaintiff Sessoms also brings this class action on behalf of a subclass of joint filers whose spouses used TaxAct's online services to prepare and file joint tax returns (the "Joint Filers Class") defined as follows:

> All persons whose spouses used TaxAct's online tax preparation software from within Pennsylvania to prepare and/or file a joint tax return during the time that Meta Pixel or Google Analytics coding was present and active on TaxAct's website and/or its other online mobile and desktop applications up and until November 23, 2022.

68.     Plaintiffs reserve the right to modify or amend the proposed Class and the definitions, including, but not limited to, adding additional subclasses as necessary.

69.     Excluded from the Class are TaxAct (as defined), its parents, subsidiaries, affiliates, officers and directors, any entity in which TaxAct has a controlling interest, all persons within the class definition who make a timely election to be excluded, governmental entities, and

15

all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

70.     The members of the Class are so numerous that joinder is impractical. The Class consists of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to TaxAct's records.

71.     Plaintiff Kirkham's claims are typical of those of the Class Members, having used TaxAct's online tax preparation software to prepare and file tax returns during the relevant period, which is since TaxAct began using pixels to share taxpayer return information with third-parties through November 23, 2022.

72.     Plaintiff Sessoms' claims are typical of those of the Class Members, with his wife having used TaxAct's online tax preparation software to prepare and file tax returns during the relevant period, which is since TaxAct began using pixels to share taxpayer return information with third-parties through November 23, 2022.

73.     Common questions of law and fact exist as to all members of the proposed Class, which predominate over any questions affecting only individual Class Members.

74.     The common questions of law and fact include:

    a.   Whether TaxAct's acts or omissions harmed Plaintiffs and the Class Members.

    b.   Whether TaxAct's intercepted electronic communications in violation of the Pennsylvania Wiretap Act.

    c.   Whether TaxAct disclosed electronic communications in violation of the Pennsylvania Wiretap Act.

d.   Whether TaxAct used electronic communications in violation of the Pennsylvania Wiretap Act.

e.   Whether Plaintiffs and the Class Members suffered injuries, including statutory injuries, imminent or impending harm, or enhanced risk of injury as a result of TaxAct's acts and omissions.

f.   Whether TaxAct violated taxpayers' privacy rights.

g.   Whether TaxAct owed a duty to Plaintiffs and the Class Members to protect their taxpayer return information.

h.   Whether TaxAct breached its duty to protect Plaintiffs and the Class Members' taxpayer return information.

i.   Whether TaxAct violated the Pennsylvania Wiretap Act.

j.   Whether TaxAct violated 26 U.S.C. §§ 6103 and 7431(a)(2).

k.   Whether Plaintiffs and the Class Members are entitled to recover actual damages, statutory damages, punitive damages, attorney's fees, costs, and interest.

l.   Whether Plaintiffs and the Class Members are entitled to equitable relief, including restitution, injunctive relief, declaratory relief, or other equitable relief.

m.  Whether Plaintiffs and the Class Members validly agreed to arbitrate their claims against TaxAct.

17

n.   Whether TaxAct may compel arbitration of Plaintiffs and the Class Members'

claims and on what terms.

75.     Plaintiffs are committed to the vigorous prosecution of this action and have

retained competent counsel experienced in the prosecution of class actions and, in particular,

class actions on behalf of consumers. Accordingly, Plaintiffs are adequate representatives and

will fairly and adequately protect the interests of the Class.

76.     A class action is superior to other available methods for the fair and efficient

adjudication of this controversy. Since the amount of each individual Class Member's claim is

small relative to the complexity of the litigation, and due to the financial resources of TaxAct, no

Class Member could afford to seek legal redress individually for the claims alleged herein.

Therefore, absent a class action, the Class Members will continue to suffer losses and TaxAct's

misconduct will proceed without remedy.

77.     Even if Class Members themselves could afford such individual litigation, the

court system could not. Given the legal and factual issues involved, individualized litigation

would significantly increase the delay and expense to all parties and to the Court. Individualized

litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a

class action presents far fewer management difficulties, allows claims to be heard which might

otherwise go unheard because of the relative expense of bringing individual lawsuits, and

provides the benefits of adjudication, economies of scale and comprehensive supervision by a

single court.

78.     Plaintiffs and the members of the Class are entitled to injunctive and declaratory

relief as a result of the conduct complained of herein. Money damages alone indeed cannot

18

afford adequate and complete relief, and injunctive relief is necessary to remedy the risk of harm

and harm caused by TaxAct's interception and dissemination of taxpayer return information.

## FIRST CLAIM FOR RELIEF

**Violation of the Pennsylvania Wiretapping and Electronic
Surveillance Control Act, 18 Pa. C.S. § 5701 *et seq.***
(On behalf of Plaintiffs and the Class)

79.     Plaintiffs repeat and incorporate the preceding paragraphs as fully set forth herein.

80.     The Pennsylvania Wiretap Act prohibits the (1) intentional interception or

procurement of another to intercept any wire, electronic, or oral communication; (2) the

intentional disclosure of the contents of any wire, electronic, or oral communication that the

discloser knew or should have known was obtained through the interception of a wire, electronic,

or oral communication; and (3) the intentional use of the contents of any wire, electronic, or oral

communication that the discloser knew or should have known was obtained through the

interception of a wire, electronic, or oral communication. 18 Pa. C.S. § 5703.

81.     By preparing and/or filing their taxes using TaxAct's website or other online

applications, or having their joint tax returns prepared by their spouses and filed using TaxAct's

website or other online applications, Plaintiffs and the Class Members (or their spouses) engaged

in electronic communications and have an interest in such electronic communications.

82.     As TaxAct is a "tax return preparer", Plaintiffs and the Class Members had a

justified expectation that their electronic communications would not be intercepted and

disclosed.

83.     Plaintiffs and the Class Members did not validly consent to having their electronic

communications intercepted by TaxAct and shared with Meta, Google, and other third-parties.

19

84.     In developing its website and other online applications, TaxAct inserted pixels into the code and used other tools, including Google Analytics, to intercept Plaintiffs and the Class Members' electronic communications automatically and surreptitiously.

85.     TaxAct intentionally intercepted and disclosed to Google, Meta, and other third-parties Plaintiffs and the Class Members' confidential taxpayer return information and had reason to know that this information was obtained through its interception of such electronic communications without their knowing and voluntary consent.

86.     TaxAct intentionally used Plaintiffs and the Class Members' intercepted electronic communications for its own purposes unrelated to the tax preparation and filing purposes for which Plaintiffs and the Class Members intended to use TaxAct's services.

87.     Under 18 Pa. C.S. § 5725, any person whose wire, electronic, or oral communication is intercepted or disclosed in violation of the Pennsylvania Wiretap Act may bring a civil action against any person who intercepts, discloses, or uses, or procures another person to do so.

88.     Due to TaxAct's violations, TaxAct is liable to Plaintiffs and the Class Members for (1) actual damages, but not less than liquidated, statutory damages computed at the rate of $100 a day for each day of the violation, or $1,000, whichever is higher; (2) punitive damages; and (3) reasonable attorney's fees and other litigation costs reasonably incurred.

89.     Plaintiffs and the Class Members are additionally entitled to injunctive and declaratory relief to fully vindicate and redress their injuries and claims as a result of the conduct complained of herein, the effects of which continue to harm Plaintiffs and the Class Members.

## SECOND CLAIM FOR RELIEF

### Violation of the 26 U.S.C. §§ 6103 and 7431
(on behalf of Plaintiffs and the Class)

90.     Plaintiffs repeats and incorporate the preceding paragraphs as fully set forth herein.

91.     "[R]eturns and return information shall be confidential . . ." 26 U.S.C. § 6103(a).

92.     Under 26 U.S.C. § 6103(b)(2), "the term return information means a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments…"

93.     26 U.S.C. § 7431(a)(2) provides that, "inspection or disclosure by a person who is not an employee of United States. If any person who is not an officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103 or in violation of section 6104(c), such taxpayer may bring a civil action for damages against such person in a district court of the United States…"

94.     TaxAct is "not an employee of the United States" under 26 U.S.C. § 7431(a)(2).

95.     TaxAct either knowingly or by reason of negligence, disclosed Plaintiffs and the Class Members' taxpayer return information in violation of 26 U.S.C. § 7431(a)(2).

96.     As a result of TaxAct's violations, TaxAct is liable to Plaintiffs and the Class Members for the greater of (1) $1,000 for each act of unauthorized inspection or disclosure of a return or return information with respect to which such defendant is found liable, or (2) the sum

21

of (a) the actual damages sustained by the plaintiff as a result of such unauthorized inspection or disclosure, plus (b) in the case of a willful inspection or disclosure or an inspection or disclosure which is the result of gross negligence, punitive damages. Plaintiffs and the Class Members are also entitled to the costs of the action and reasonable attorney's fees.

97.     Plaintiffs and the Class Members are additionally entitled to injunctive and declaratory relief to fully vindicate and redress their injuries and claims as a result of the conduct complained of herein, the effects of which continue to harm and will continue to harm Plaintiffs and the Class Members.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs, individually and on behalf of the members of the Class, respectfully request the Court to enter an Order:

a.   certifying the proposed Class and directing that notice issue to the Class;

b.   declaring TaxActs' conduct as described herein as violating the Pennsylvania Wiretap Act, 18 Pa. C.S. § 5710 *et seq.*;

c.   requiring TaxAct to pay damages of $100 a day for each day of violation or $1,000 to Plaintiffs and each Class Member for each violation, as provided under Pennsylvania Wiretap Act, 18 Pa. C.S. § 5725(a);

d.   declaring TaxAct's conduct as described herein as violating 26 U.S.C. §§ 6103 and 7431(a)(2).

e.   requiring TaxAct to pay Plaintiffs and the Class Members for the greater of (1) $1,000 for each act of unauthorized inspection or disclosure of a return or return information with respect to which such defendant is found liable, or (2)

22

the sum of (a) the actual damages sustained by the plaintiffs as a result of such unauthorized inspection or disclosure, plus (b) in the case of a willful inspection or disclosure or an inspection or disclosure which is the result of gross negligence, punitive damages;

f.   awarding punitive damages, as warranted, in an amount to be determined at trial;

g.   granting disgorgement of the ill-gotten gains derived by TaxAct from its misconduct;

h.   declaring that Plaintiffs and the Class Members have not validly agreed to arbitrate the claims asserted in this manner, that TaxAct may not compel the arbitration of such claims, and that TaxAct may not enforce any provision of an arbitration agreement that precludes Plaintiffs and the Class Members from participating in mass or class arbitration proceedings should TaxAct contend that Plaintiffs and/or the Class Members are subject to arbitration;

i.   awarding prejudgment interest on all amounts awarded;

j.   awarding restitution and all other forms of equitable monetary relief;

k.   issuing injunctive relief as pleaded or as the Court may deem proper;

l.   awarding costs and expenses incurred by Plaintiffs in connection with this action, including reasonable attorney's fees;

m.   awarding such other relief as this Court deems just and proper.

23

## DEMAND FOR JURY TRIAL

Plaintiffs and all others similarly situated hereby demand trial by jury on all issues in this

Amended Class Action Complaint that are so triable as a matter of right.

Respectfully submitted,

COHEN, PLACITELLA & ROTH, P.C.

By:     /s/ James P. Goslee
        James P. Goslee (#203043)
        Michael Coren (#31037)
        Eric S. Pasternack (#320127)
        Jared M. Placitella (#321333)
        2001 Market St., Suite 2900
        Philadelphia, PA 19103
        (215) 567-3500
        jgoslee@cprlaw.com
        mcoren@cprlaw.com
        epasternack@cprlaw.com
        jmplacitella@cprlaw.com