IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES KIRKHAM, on behalf of himself and all others similarly situated, and | : | Civil Action No. 2:23-CV-3303-WB |
| MATTHEW SESSOMS, on behalf of himself and all others similarly situated, | : | Jury Trial Demanded |
| Plaintiffs, | : | |
| v. | : | |
| TAXACT, INC., | : | |
| Defendant. | : | |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**

COHEN, PLACITELLA & ROTH, P.C.

James P. Goslee (#203043)
Michael Coren (#31037)
Eric S. Pasternack (#320127)
Jared M. Placitella (#321333)
2001 Market St., Suite 2900
Philadelphia, PA 19103
(215) 567-3500
jgoslee@cprlaw.com
mcoren@cprlaw.com
epasternack@cprlaw.com
jmplacitella@cprlaw.com

# TABLE OF CONTENTS

I. Introduction and Background ........................................................................1

II. Argument ..........................................................................................................4

A. Plaintiff Kirkham did not agree to arbitration. ..............................................4

1. Whether Plaintiff Kirkham agreed to arbitration must be determined under the ordinary rules for contract formation under Pennsylvania law. ...................4

2. TaxAct cannot satisfy its burden under Pennsylvania law to establish that Plaintiff Kirkham agreed to arbitration. ............................................................5

B. The arbitration agreement is procedurally and substantively unconscionable. 10

C. TaxAct has raised a threshold issue that could preclude this Court from compelling arbitration—that is, whether Article III's case or controversy requirement has been satisfied here. ..................................................................17

III. Conclusion .......................................................................................................17

# TABLE OF AUTHORITIES

## Cases

*Alexander v. Anthony Intern., L.P.*,
341 F.3d 256 (3d Cir. 2023)........................................................................16

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)..................................................................................15

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .....................................................................6, 8, 9

*Century Indem. Co. v. Certain Underwriters at Lloyd's London*,
584 F.3d 513 (3d Cir. 2009).......................................................................4, 5

*Checchia v. Solo Funds*,
No. 23-444,
2023 WL 3868369 (E.D. Pa. June, 7, 2023) .........................................................7

*Chilutti v. Uber Tech., Inc.*,
300 A.3d 430 (Pa. Super. 2023)..................................................................passim

*Clymer v. Jetro Cash and Carry Enterprises, Inc.*,
334 F. Supp. 3d 683 (E.D. Pa. 2018) ............................................................11, 12

*Coulter v. Experian Information Solutions, Inc.*,
No. 20-1814,
2021 WL 735726 (E.D. Pa. Feb. 25, 2021) ..........................................................9

*Edwards v. Hovensa, LLC*,
497 F.3d 355 (3d Cir. 2007).........................................................................13

*Jaludi v. Citigroup*,
933 F.3d 246 (3d Cir. 2019)...........................................................................4

*James v. Global TelLink Corp.*,
852 F.3d 262 (3d Cir. 2017)...........................................................................8

*Katz v. Six Flags Great Adventure, LLC,*
2018 WL 3831337 (D.N.J. Aug. 13, 2018) ........................................................17

*Kohlman v. Grane Healthcare Co.*,
279 A.3d 42 (Pa. Super. 2022)............................................................................11

*Lelouis v. Western Directory Co.*,
230 F. Supp. 2d 1214 (D. Or. 2001) ..................................................................14

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)...............................................................................................3

*MacClelland v. Cellico Partnership*,
609 F. Supp. 3d 1024 (N.D. Cal. 2022) ......................................................13, 14

*McCulligan v. Pennsylvania State Police*,
123 A.3d 1136 (Pa. Cmwlth. Ct. 2015) .............................................................14

*Morgan v. Sundance, Inc.*,
596 U.S. __, 142 S.Ct. 1708 (2022)......................................................................6

*Mountain Prop., Inc. v. Taylor Hill Realty Corp.*,
767 A.2d 1096 (Pa. Super. 2001)..........................................................................5

*Nagrampa v. Mailcoups, Inc.*,
469 F.3d 1257 (9th Cir. 2006) ............................................................................16

*Okten v. ARS National Services, Inc.*,
2023 WL 3249828 (D. NJ 2023) .........................................................................17

*Parilla v. IAP Worldwide Servs., VI, Inc.*,
368 F.3d 269 (3d Cir. 2004)..........................................................................11, 16

*Quilloin v. Tenet HealthSystem Phila., Inc.*,
673 F.3d 221 (3d Cir. 2012)..........................................................................13, 15

*Schreiber v. Olan Mills*,
627 A.2d 806 (1993) ..............................................................................................5

*Spececht v. Netscape Comm'ns Corp.*,
306 F.3d 17 (2d Cir. 2002)..........10

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)..........17

*Thibodeau v. Comcast Corp.*,
912 A.2d 874 (Pa. Super. 2006)..........15

*TransUnion v. Ramirez*,
141 S. Ct. 2190 (2021)..........17

*Wert v. ManorCare of Carlisle PA, LLC*,
124 A.3d 1248 (Pa. 2016)..........12

**Statutes**

18 Pa. C.S. § 5701..........1

18 Pa.C.S.A. § 5725(a)(1)..........13

26 U.S.C. § 6103..........1

26 U.S.C. § 7431(a)(2)..........1

73 P.S. § 2205(a), (b)..........11

## I. Introduction and Background

Plaintiff James Kirkham, like so many others, trusted TaxAct, Inc. to safeguard his personal and confidential tax return information. That trust was misplaced. As a Congressional Report revealed earlier this year,[1] TaxAct embedded in its website and online tax preparation and filing applications computer code—"pixels"—that intercept, disclose, and without the taxpayers' knowledge or consent, transmit taxpayers' confidential tax return information to third parties including Google and Meta. Having violated that trust, TaxAct is liable under federal and Pennsylvania law for statutory liquidated damages as well as actual damages, punitive damages, and attorney's fees and costs.[2]

Rather than offer a merits-based defense to these claims, TaxAct asks this Court to compel Plaintiff Kirkham to submit to arbitration. Its motion should be denied. Plaintiff James Kirkham never agreed to the arbitration. See 10/12/2023 Declaration of James Kirkham Decl., ¶ 5. Nor did he knowingly and unambiguously agree to waive his constitutional right to a jury trial. TaxAct does not even contend that Plaintiff Kirkham read the Terms of Service and License

---

[1] https://www.warren.senate.gov/imo/media/doc/Attacks%20on%20Tax %20Privacy%20Report_7.12.2023.pdf (last accessed July 20, 2023).

[2] TaxAct violated 26 U.S.C. §§ 6103 and 7431(a)(2) as well as the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("Pennsylvania Wiretap Act"), 18 Pa. C.S. § 5701, *et seq.*

Agreement. Instead, it asks this Court to find that Plaintiff Kirkham waived and forfeited his constitutional right because TaxAct's website featured a "clickwrap" agreement. But TaxAct's website contained nothing of the sort. The defining characteristic of a "clickwrap" agreement is that it presents the user with the terms and conditions, often in a scrollable pop-up window, and requires the user to affirmatively accept the terms and conditions. TaxAct's website did not present the Terms of Service and License Agreement in a scrollable, pop-up window to Plaintiff Kirkham. Nor did it warn users that by clicking a checkbox, they agreed to be bound by the Terms of Service and License Agreement.

Instead, TaxAct used a "browserwrap" agreement. In contrast to a clickwrap agreement, where the user must manifest assent to the terms and conditions by clicking on an "I agree" box, a browserwrap agreement does not, and thus does not meet Pennsylvania law's strict requirement that it obtain an unambiguous express manifestation of assent to the agreement. *Chilutti v. Uber Tech., Inc.*, 300 A.3d 430, 450 (Pa. Super. 2023). TaxAct cannot, as a result, meet its burden under Pennsylvania law prove: (1) that it "explicitly state[d] on the registration website that the consumer that the consumer is waiving a right to a jury trial when they agree to the company's 'terms and conditions,' and the registration process cannot be completed until the consumer is fully informed of the waiver;"

and (2) that in the waiver itself, the waiver "appear[s] at the top of the first page in bold, capitalized text." *Id*.

TaxAct's Terms of Service and License Agreement is moreover procedurally and substantively unconscionable: it is a contract of adhesion and includes terms that unreasonably favor TaxAct to the disadvantage of its users by limiting the remedies available to them and the time in which they may pursue their claims. Given the cumulative effect of these unconscionable practices and terms, the offending provisions cannot be severed and TaxAct's motion to compel arbitration should be denied.[3]

Finally, TaxAct has asserted that this Court lacks subject matter jurisdiction given Plaintiffs' statutory damages claims. Dkt. 14. As TaxAct invoked this Court's jurisdiction, it bears the burden of establishing Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). TaxAct cannot have it both ways: either this case involves an Article III case or controversy or this Court is

[3] As Plaintiffs have filed an Amended Class Action Complaint, Dkt. 22, which names as a putative class representative a person that did not personally use TaxAct's website, no credible argument could be made that TaxAct could compel arbitration of all claims raised in this putative class action and that discovery should be stayed. Indeed, TaxAct states that it is only raising the "stay" argument for preservation purposes.

without subject matter jurisdiction to grant TaxAct any relief and this case should be remanded to the Court of Common Pleas.

## II. Argument

### A. Plaintiff Kirkham did not agree to arbitration.

TaxAct concedes that the primary inquiry here—whether Plaintiff Kirkham agreed to arbitration—is a question of state law. Yet it offers no argument based on Pennsylvania law as recognized by the Superior Court of Pennsylvania in *Chilutti v. Uber Tech., Inc.*, 300 A.3d 430 (Pa. Super. 2023)(*en banc*). And so, TaxAct is left arguing that a presumption of arbitrability exists and it obtained valid consent because its website featured a "clickwrap" agreement. Both propositions fail: first, the Federal Arbitration Act's presumption of arbitrability only arises after it has been determined (under state law) that there is a valid agreement to arbitrate; and second, TaxAct's website used a "browse-wrap" agreement.

#### 1. Whether Plaintiff Kirkham agreed to arbitration must be determined under the ordinary rules for contract formation under Pennsylvania law.

As the Third Circuit has recognized, the determination of whether arbitration is required involves a two-step process. *Jaludi v. Citigroup*, 933 F.3d 246, 255 (3d Cir. 2019). The first step asks whether "'there is an agreement to arbitrate.'" *Id.* (quoting *Century Indem. Co. v. Certain Underwriters at Lloyd's London*, 584 F.3d 513, 523 (3d Cir. 2009)). While in the second step, the court must consider

whether "the dispute at issue falls within the scope of the agreement." *Id.* (quoting *Century Indem.*, 584 F.3d at 523). "The first step is governed by state law." *Id.* (citing *Century Indem.*, 584 F.3d at 524). As the dispute here—whether Plaintiff Kirkham agreed to arbitration—centers on the first step, the "ordinary state-law principles that govern the formation of contracts" dictate the outcome of this matter. *Id.* (citing *First Options of Chi. v. Kaplan*, 514 (U.S. 938, 944 (1995)).

**2. TaxAct cannot satisfy its burden under Pennsylvania law to establish that Plaintiff Kirkham agreed to arbitration.**

Under Pennsylvania law, there are three elements of an enforceable contract: offer, acceptance, and consideration. *Chilutti*, 300 A.3d at 443. As the Superior Court recognized in *Chilutti*, "[t]here must be a meeting of the minds; the very essence of an agreement is that the parties mutually assent to the same thing." *Id.* (quoting *Schreiber v. Olan Mills*, 627 A.2d 806, 808 (1993). "Whether particular conduct expresses an offer and acceptance must be determined on the basis of what a reasonable person in the position of the parties would be led to understand by such conduct under all of the surrounding circumstances." *Id.* (quoting *Mountain Prop., Inc. v. Taylor Hill Realty Corp.*, 767 A.2d 1096, 1101 (Pa. Super. 2001)).

In *Chilutti*, the Superior Court recognized that because consumer arbitration agreements tend to conflict with the consumers' constitutional right to a jury trial under both the U.S. and Pennsylvania Constitutions, Pennsylvania law in turn requires a strict burden of proof demonstrating a party's unambiguous

manifestation of assent to arbitration.[4] *Id.* at 449-50. As the Superior Court explained, this standard can be satisfied by: "(1) explicitly stating on the registration website and application screens that the consumer is waiving a right to a jury trial when they agree to the company's 'terms and conditions,' and the registration process cannot be completed until the consumer is fully informed of the waiver; and (2) when the agreements are available for viewing after a user has clicked on the hyperlink, the waiver should not be hidden in the 'terms and conditions' provision but should appear at the top of the first page in bold, capitalized text." *Id.* at 450; *see also Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022) ("Because online providers have complete control over the design of their websites, the onus must be on website owners to put users on notice of the terms to which they wish to bind consumers.").

TaxAct cannot satisfy either of these requirements.

First, the registration screen for TaxAct does not "explicitly" state that the consumer is waiving his or her right to a jury trial by agreeing to the company's terms and conditions.

---

[4] This burden of proof does not exact arbitration agreements to a more demanding standard than other sorts of agreements such confessions of judgment. *Chilutti*, 300 A.3d at 442. Applying the standard set forth in *Chilutti* to arbitration agreements therefore makes "arbitration agreements as enforceable as other contracts, but not more so." *Morgan v. Sundance, Inc.*, 596 U.S. __, 142 S.Ct. 1708, 1713 (2022).




Jaeger Decl., Exhibit B-1. Furthermore, TaxAct has not offered admissible evidence that the link on the "Tax Year 2020 Create Account" page, which reads "TaxAct Terms of Service & Terms of Use," Jaeger Decl., Exhibit B-1, actually directed users to the "TaxAct Terms of Services and License Agreement," Jaeger Decl., Exhibit C. *See Checchia v. Solo Funds*, No. 23-444, 2023 WL 3868369, *9 (E.D. Pa. June, 7, 2023) ("critically, there is nothing indicating that the 'Terms of Service' are in fact 'SoLo's Terms & Conditions' to which the user is agreeing when clicking the 'I agree' checkbox.").

Second, were a user to click the link and view the "TaxAct Terms of Service and License Agreement," they would not find the "waiver" "at the top of the first

page in bold, capitalized text[.]"[5] Jaeger Decl., Exhibit C-1. The user would rather have to read through four pages of dense, legalese before getting to the "Dispute Resolution; Binding Arbitration" provision. *Id.*, Exhibit C-4.

Rather than address the requirements for forming a contract under Pennsylvania law, TaxAct claims that its website featured a "clickwrap" agreement and that such agreements are routinely found enforceable. Db7-8. While some courts have found "clickwrap" agreements enforceable, that is of no moment here as TaxAct's website did not present users, such as Plaintiff Kirkham, with a "clickwrap" agreement. As the Third Circuit has observed, a "clickwrap" agreement requires a user to "click on an acceptance after being presented with terms and conditions[.]" *James v. Global TelLink Corp.*, 852 F.3d 262, 267 (3d Cir. 2017). This is accomplished by presenting users "with specified contractual terms on a pop-up screen," which then requires users to "check a box explicitly stating 'I agree' in order to proceed." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). TaxAct's website did not feature a pop-up screen

[5] Indeed, to make this link and others, TaxAct relies on the Declaration of Mark Jaeger. In another proceeding, in which Mr. Jaeger signed a nearly identical declaration to the one here, he admitted that he did not confirm the accuracy of any hyperlinks, Goslee Decl., Exhibit B, T79:2-20, that he does not have personal knowledge of TaxAct's supposed practice requiring users to accept the terms and conditions, *id.*, T69:5-12, that he has not checked the "database to verify how things work," *id.*, T74:4-9, and that he did not independently review any of the code on TaxAct's website, *id.*, T82:16-19.

presenting users with the arbitration agreement; it displayed only a link—and a link to "TaxAct Terms of Service & Terms of Use" and not the "TaxAct Terms of Service and License Agreement—making it a "browse-wrap" agreement. TaxAct's other arguments fare no better.

TaxAct contends that Plaintiff Kirkham manifested assent to arbitration by checking a "checkbox agreeing to the Terms." Db8. TaxAct's "Create Account" page, however, does not inform users that by clicking the checkbox, they are agreeing to be bound by the "TaxAct Terms of Services and License Agreement." *Cf. Berman*, 30 F.4th at 857-58 ("the notice must explicitly notify a user of the legal significance of the action she must take to enter into a contractual agreement. The notice did not do so here. Both webpages stated, 'I understand and agree to the Terms & Conditions,' but they did not indicate to the user what action would constitute assent to those terms and conditions."); *Coulter v. Experian Information Solutions, Inc.*, No. 20-1814, 2021 WL 735726, *5 (E.D. Pa. Feb. 25, 2021) ("reasonable notice was provided when Defendant's website advised Plaintiff that '[b]y clicking the 'Submit Secure Order' button, Plaintiff manifested his assent to the Terms of Use Agreement"); *Chilutti*, 300 A.3d at 450 ("We acknowledge that the two agreements at issue herein would arguably meet the standard recited by the *Berman* Court" as "the text did include language like 'By clicking Create Account, you agree to Uber's Terms and Conditions.'").

Seemingly as a fallback position, TaxAct asserts that "the Terms, which contain the Arbitration Agreement, are publicly available on the TaxAct website and a hyperlink to the Terms is listed at the footer of every page on the TaxAct website and software." Db8. A spatially disconnected link to the terms and conditions however does not suffice to put a user on notice that he or she may be bound to an arbitration agreement. *Specht v. Netscape Comm'ns Corp.*, 306 F.3d 17, 35 (2d Cir. 2002) (rejecting motion to compel arbitration as users "would not have seen the terms Netscape exacted without scrolling down their computer screens, and there was no reason for them to do so"); *see also Chilutti*, 300 A.3d at 443 ("It is reasonable to assume that if the arbitration provision is buried deep in webpages in tiny print, the person was not aware of the provision and it is unenforceable.").

Under Pennsylvania law, TaxAct's motion to compel arbitration should therefore be denied.

### B. The arbitration agreement is procedurally and substantively unconscionable.

Given that TaxAct cannot satisfy its burden under Pennsylvania to establish that Plaintiff Kirkham assented to arbitration, it inextricably follows that Plaintiff Kirkham also could not have agreed to delegate any disputes over arbitrability to

an arbitrator as TaxAct contends.[6] This Court may therefore also consider the procedural and substantive unconscionability of Tax Act's "TaxAct Terms of Service and License Agreement" as an additional reason to deny TaxAct's motion to compel arbitration.

Under Pennsylvania law, "[p]rocedural and substantive unconscionability are assessed under a sliding-scale approach, with a lesser degree of substantive unconscionability required where the procedural unconscionability is very high." *Kohlman v. Grane Healthcare Co.*, 279 A.3d 42, 48 (Pa. Super. 2022). Procedural unconscionability "is generally found in contracts of adhesion." *Clymer v. Jetro Cash and Carry Enterprises, Inc.*, 334 F. Supp. 3d 683, 691 (E.D. Pa. 2018). "A contract of adhesion is one prepared by a party with excessive bargaining power and presented to the other party on a 'take it or leave it' basis." *Id.* (quoting *Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 276 (3d Cir. 2004). Substantive unconscionability meanwhile "refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173 (3d Cir. 1999). "To establish

---

[6] The language of the delegation provision on which TaxAct relies also violates the Plain Language Consumer Contract Act's test of readability as it is neither easy to read nor understand considering its use of cross-references to JAMS Rules without a clear description of the substance of the item to which reference is made. 73 P.S. § 2205(a), (b).

substantive unconscionability, the plaintiff must show that the contractual terms are unreasonably favorable to the drafter[.]" *Clymer v. Jetro Cash and Carry Enterprises, Inc.*, 334 F. Supp. 3d 683, 691 (E.D. Pa. 2018).

There are several bases to find procedural and substantive unconscionability here. Indeed, the unconscionability of the Terms and License Agreement is readily apparent considering that several, material provisions in the Agreement fall below the "Consumer Arbitration Minimum Standards," as defined by TaxAct's chosen arbitrator, JAMS. Goslee Decl., Exhibit A.[7]

First, the Terms of Service and License Agreement includes a provision limiting the remedies available to users: "The entire liability of TaxAct and the participating parties (jointly) for any reason shall be limited to the amount paid by you for the services and content." Jaeger Decl., Exhibit C-3. Plaintiff's federal and

---

[7] In particular, the "Minimum Standards" requires that "[r]emedies that would otherwise be available to the consumer under applicable federal, state or local laws must remain available under the arbitration clause, unless the consumer retains the right to pursue the unavailable remedies in court." *Id.*, pg. 1. The "Minimum Standards" also require that the consumer "have the right to an in-person hearing in his or her hometown area" and that the "clause or procedures must not discourage the use of counsel." Because the Terms and License Agreement do not satisfy the "minimum standards of fairness," as defined by JAMS, the Agreement is unconscionable. JAMS also will not administer the arbitration as a result of TaxAct's failure to satisfy the "Minimum Standards." *Id.* The Agreement is therefore unenforceable multiple times over. *See Wert v. ManorCare of Carlisle PA, LLC*, 124 A.3d 1248, 1263 (Pa. 2016) (that section 5 of the FAA cannot preserve the agreement where the selected arbitral forum and procedures were never available to the parties).

state-law claims have statutory liquidated damages provisions. For example, the Wiretap Act's statutory damages provision affords plaintiffs "[a]ctual damages, but not less than liquidated damages computed at the rate of $100 a day for each day of violation, or $1,000, whichever is higher" as well as punitive damages and attorney's fees and litigation costs. 18 Pa.C.S.A. § 5725(a)(1). By limiting TaxAct's liability to the amount paid for services, TaxAct would reduce its liability to between "$99.50" and "$0", which falls far short of what the Legislature though appropriate in passing the Pennsylvania Wiretap Act, for example, which provides statutory minimum damages of at least $1,000 plus punitive damages, attorney's fees and costs.[8] That renders Terms of Service and License Agreement unconscionable. *See MacClelland v. Cellico Partnership*, 609 F. Supp. 3d 1024 (N.D. Cal. 2022) ("an arbitration agreement may not limit statutorily imposed remedies such as punitive damages and attorney fees"); *cf. Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 230 (3d Cir. 2012) (quoting *Edwards v. Hovensa, LLC*, 497 F.3d 355, 364 (3d Cir. 2007)) ("An arbitration agreement cannot be construed as substantively unconscionable where it 'does not alter or limit the rights and remedies available to [a] party in the arbital forum'").

[8] "File your own," https://www.taxact.com/?version=10042023con&promo=HT100423DXCON (last accessed October 11, 2023).

Second, the Wiretap Act provides for a two-year statute of limitations, which begins to run only once the plaintiff learns of the unlawful wiretapping. *McCulligan v. Pennsylvania State Police*, 123 A.3d 1136, 1140-41 (Pa. Cmwlth. Ct. 2015). The Terms of Service and License Agreement thus impermissibly shortens the time in which users could bring claims to one year—a fully year less than what the Legislature chose to provide under the Pennsylvania Wiretap Act. *See Lelouis v. Western Directory Co.*, 230 F. Supp. 2d 1214 (D. Or. 2001) (finding one-year limitations period imposed by an arbitration provision to be unconscionable in view of the otherwise applicable statute of limitations for statutory claims); *MacClelland*, 609 F. Supp. 3d at 1035 ("Contractual agreements to shorten the statute of limitations period are generally disfavored because they derogate statutory intent"). The one-year statute of limitations provision in the Terms of Service and License Agreement therefore poses a potential trap for the unwary and is substantively unconscionable generally, and in particular here where users could not have known that TaxAct inserted pixels into the coding of its website, which would covertly intercept, disclose, and transmit tax return information and other personal identifiers to third-parties.

Third, TaxAct's Terms of Service and License Agreement includes a class action waiver. Under Pennsylvania law, "class action waivers are substantively unconscionable where 'class action litigation is the only effective remedy' such as

when 'the high cost of arbitration compared within the minimum potential value of individual damages denie[s] every plaintiff a meaningful remedy."[9] *Quilloin*, 673 F.3d at 232 (quoting *Thibodeau v. Comcast Corp.*, 912 A.2d 874, 883-84 (Pa. Super. 2006)). That is the case here. Absent allowing this matter to proceed as a class action, individual plaintiffs will be denied an effective remedy.

Third, by TaxAct's own admission, it designed its website to steer users to accept the arbitration agreement knowing full well that most, if not all, users would not read the arbitration agreement. At the same time, it drafted the form agreement—a contract of adhesion—so that a user would have to read through 4 pages of legalese before seeing that they could opt-out of the arbitration agreement by sending an email to arbitration@taxact.com within 30 days of when the user "first accepted the terms of this Section." Jaeger Decl., Exhibit C-4. And making it more difficult still for users, TaxAct requires the "opt-out notice" to include the user's "full name and ***clearly indicate*** [their] intent to opt out of binding arbitration." *Id.* The disparity here is striking. As drafted by TaxAct, a user could agree to arbitration despite having never viewed the arbitration agreement yet to

[9] As Plaintiff Kirkham did not agree to arbitration as discussed *supra* and the unconscionable provisions of the Terms of Service and License Agreement cannot be severed given their cumulative effect, the Federal Arbitration Act does not preclude this Court from finding that the class action waiver is unconscionable. *Cf. AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011).

opt out of the agreement, the user would have to read the agreement and "clearly indicate" their intent to opt out. This renders the Terms of Service and License Agreement both procedurally and substantively unconscionable.

Fourth, TaxAct has also self-servingly designated Texas as the location for all arbitrations. As Plaintiff Kirkham explains in his declaration, that requirement places a significant burden on him given the inconvenience and expense of having to travel to Texas. *See Kirkham* Decl., ¶ 9. Because that burden is not mutually shared, it is unconscionable. *See Nagrampa v. Mailcoups, Inc.*, 469 F.3d 1257, 1289 (9th Cir. 2006).

Where there is a "multitude of unconscionable provisions in an agreement to arbitrate," severance of the offending provisions should not be allowed, and the agreement should not enforced. *Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 289 (3d Cir. 2004); *Alexander v. Anthony Intern., L.P.*, 341 F.3d 256, 271 (3d Cir. 2023) (finding severance inappropriate where the agreement limited the time in which employees could bring claims and the amount and type of relief they could obtain). Because the Terms of Service and License Agreement is a contract of adhesion and includes "draconian terms" that unreasonably favor TaxAct to the disadvantage of its user by limiting the remedies available to them and the time in which they may pursue their claims, the cumulative effect precludes severing the offending provisions. As the Terms of Service and License Agreement is "afflicted

by so much fundamental and pervasive unfairness," TaxAct's motion to compel arbitration should be denied.

### C. TaxAct has raised a threshold issue that could preclude this Court from compelling arbitration—that is, whether Article III's case or controversy requirement has been satisfied here.

Lastly, despite having removed this matter to this Court, TaxAct has questioned whether Article III's case and controversy requirement is satisfied in this matter given the statutory basis of both plaintiffs' substantive and the liquidated damages claims. *See TransUnion v. Ramirez*, 141 S. Ct. 2190 (2021); *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016). Having raised this threshold issue, it is incumbent on TaxAct to justify its removal of this Action to this Court. Absent a case or controversy, there is no subject matter jurisdiction and the only relief that can be granted in this matter is an order remanding this case to the Court of Common Pleas. *See Okten v. ARS National Services, Inc.*, 2023 WL 3249828 (D. NJ 2023); *Katz v. Six Flags Great Adventure, LLC,* No. CV-18116, 2018 WL 3831337, at *8-9 (D.N.J. Aug. 13, 2018). For this reason alone, the motion should be denied and this Action should be remanded to the Court of Common Pleas. *Id.*

## III. Conclusion

For all these reasons, TaxAct's motion to compel arbitration should be denied.

Respectfully submitted,

COHEN, PLACITELLA & ROTH, P.C.

By: /s/ James P. Goslee
James P. Goslee (#203043)
Michael Coren (#31037)
Eric S. Pasternack (#320127)
Jared M. Placitella (#321333)
2001 Market St., Suite 2900
Philadelphia, PA 19103
(215) 567-3500
jgoslee@cprlaw.com
mcoren@cprlaw.com
epasternack@cprlaw.com
jmplacitella@cprlaw.com

Dated: October 13, 2023