**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JAMES KIRKHAM and MATTHEW SESSOMS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TAXACT, Inc.,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Civil Action No.: 2:23-CV-3303-WB<br><br>**ECF CASE**<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT TAXACT, INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

## INTRODUCTION

In the face of robust evidence that in using TaxAct's Services, Plaintiffs entered into contracts with a binding Arbitration Agreement that includes a delegation provision, Plaintiffs seek to change the subject. Plaintiffs do not dispute that if they assented to the Terms (which contain the Arbitration Agreement), an arbitrator must decide whether the claims are subject to arbitration. Instead, Plaintiffs argue that they did not agree to arbitrate because the Terms were a browsewrap agreement and because Matthew Sessoms authorized his wife to file his tax returns instead of doing so himself, and claim the Arbitration Agreement as a whole is unconscionable.

These arguments fail. The evidence establishes that Plaintiffs agreed to the Terms and, thus, to arbitration. Plaintiffs' reliance on Pennsylvania case law ignores Supreme Court precedent, declaring such laws preempted by the Federal Arbitration Act ("FAA"). Further, Plaintiffs' unconscionability attacks are improper because they target the entire Arbitration Agreement, and not just the delegation provision. The case should be stayed pending arbitration.

### I. PLAINTIFFS FAIL TO OVERCOME TAXACT'S ASSENT SHOWINGS.

#### A. The Terms Were a Clickwrap Agreement And Plaintiffs Manifested Assent.

TaxAct's Terms were a clickwrap agreement for the reasons stated in its motion. *See* Mem. in Supp. of Mot. ("Mot.") 11-13 (Nov. 10, 2023), ECF No. 30-1. Plaintiffs dispute that by claiming that the Terms are not presented to users on a pop-up screen. *See* Opp'n to Mot. to Compel ("Opp.") 2, 6 (Dec. 1, 2023), ECF No. 31. That argument fails. Plaintiffs received notice of the hyperlinked Terms, which include the Arbitration Agreement, and assented by *clicking* (the essence of clickwrap) "I agree to the TaxAct Terms of Service & Terms of Use [hyperlinked]" at the point of account creation, and then again clicking "I agree to the terms and

conditions [hyperlinked]" at the point of e-filing for each tax year.[1] Mark Jaeger Decl. in Support of Mot. to Compel ("Jaeger Decl.") ¶¶ 6, 17 & Exs. F, H. This process is nearly identical to the situation in *Dobbs v. Health IQ Insurance Services, Inc.*, No. CV21-5276, 2022 WL 2974713 (E.D. Pa. July 27, 2022), which found assent where the plaintiff received "notice of the hyperlinked Terms of Use, including the agreement to arbitrate potential claims, and manifested assent by clicking the 'SUBMIT' button." *Id*. at *4.

*Berman v. Freedom Financial Network*, LLC, 30 F. 4th 849 (9th Cir. 2022) is not to the contrary. First, the notice in *Berman* was "deemphasized" compared to the rest of the page due to the font color, size, and overall design of the webpage. *Id.* at 857. Not so here. Second, while a user would have to click a "Continue" button in *Berman*, that button was used to continue the process for filling out the information, not as acceptance to the terms. Again, that is not the case here: TaxAct users must click a check box that explicitly states "I agree" to the hyperlinked Terms at multiple points—facts that courts have found sufficient to establish adequate notice and manifestation of assent to the terms. *See Dobbs*, *supra*; *Zabokritsky v. JetSmarter, Inc.*, No. 19-273, 2019 WL 2563738, at *2-3, *5 (E.D. Pa. June 20, 2019) (finding a clickwrap agreement existed where the app user had to slide a button "I agree to Terms of Use" and the words "Terms of Use" were hyperlinked to the Terms of Service).

Finally, Plaintiffs claim that reasonable notice was not provided to users because there were slight differences in nomenclature used to identify the terms that a user would agree to versus the name of the Terms in the hyperlink: i.e., "TaxAct Terms of Service & Terms of Use" versus "TaxAct Terms of Service and License Agreement." *See* Opp. 9-10. Not only is this

[1] The Terms, which contain the Arbitration Agreement, are also publicly available on the TaxAct website, and a hyperlink to the Terms is additionally listed at the footer of every page on the TaxAct website and software. Jaeger Decl. ¶ 8.

argument hypertechnical and unpersuasive, the case Plaintiffs rely on—*Checchia v. Solo Funds*, No. 23-444-KSM, 2023 WL 3868369 (E.D. Pa. June 7, 2023)—is distinguishable. The *Checchia* court held a particular notice was inadequate because of the distance between the hyperlinked terms and the checkbox, and because there was also a separate product's terms of service present on the same page, potentially causing confusion for a user. *Id*. at *9. Here, the checkbox hyperlinks the Terms directly and there are no other terms of service found on the page. In other words, it is clear that the hyperlinks in the account creation and e-filing checkboxes are in fact the "TaxAct Terms of Service and License Agreement."

Finally, even if this Court were to evaluate the Terms under a browsewrap analysis, Plaintiffs still manifested their assent. Plaintiffs again stake their argument on *Chilutti v. Uber Technologies, Inc.*, 300 A.3d 430 (Pa. Super. Ct. 2023) (en banc)—despite that, as explained below (Mot. 19-20; *infra*), the case is preempted by the FAA. But even *Chilutti* makes clear that agreements are sufficient so long as "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Chilutti*, 300 A.3d at 444. As discussed, those conditions are plainly satisfied here. *See HealthplanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 332-34 (W.D. Pa. 2020) ("Thus, while not strictly 'clickwrap,' the agreement here similarly avoids the concerns regarding lack of notice and manifested assent that often lead courts to decline to enforce pure browsewrap agreements buried 'in obscure sections of a webpage that users are unlikely to see[.]'").

**B. *Chilutti* Is Preempted by the FAA.**

Plaintiffs rely heavily on *Chilutti* to argue that TaxAct cannot establish that Plaintiffs assented to arbitrate under Pennsylvania law. But they dodge TaxAct's primary showing (Mot. 19-20): that *Chilutti*'s added requirements to establish assent to arbitrate contravene the Supreme

Court's "equal treatment" principle under the FAA, which provides that "[a] Court may invalidate an arbitration agreement based on 'generally applicable contract defenses' like fraud and unconscionability, but not on legal rules that 'apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.'" *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 251 (2017) (citation omitted) (invalidating a nearly identical Kentucky law). Plaintiffs' failure to cite *Kindred* is striking given the Supreme Court's rejection of a state court decision that did exactly what *Chilutti* has done: "adopt a legal rule hinging on the primary characteristic of an arbitration agreement." *Kindred Nursing*, 581 U.S. at 247.

*Kindred* aside, Plaintiffs do not mention the Supreme Court's equal treatment rule, much less provide any meaningful argument for why the FAA does not preempt "Pennsylvania's more demanding standard" for arbitration agreements. *See* Opp. 5. Plaintiffs' only response is a conclusory footnote asserting that *Chilutti*'s "burden of proof does not exact arbitration agreements to a more demanding standard than other sorts of agreements such confessions [sic] of judgment." Opp. 10 n.7. That is *ipse dixit* and the Court need not consider such an "undeveloped" argument. *Rice v. First Energy Corp.*, 339 F. Supp. 3d 523, 533 (W.D. Pa. 2018). In any event, "confession[s] of judgment" bear no resemblance to arbitration agreements—instead, they involve significant waiver of rights, including the confessing party welcoming judgment against itself and foregoing "every defense"—and therefore are not typical "contract[s]." *See, e.g.*, *Cutler Corp. v. Latshaw*, 97 A.2d 234, 236 (Pa. 1953) (confession of judgment "is perhaps the most powerful and drastic document known to civil law" because "[t]he signer deprives himself of every defense and every delay of execution"). Notably, Plaintiffs provide no example of any contracts that are required to include specific waivers of jury rights in

the way that *Chilutti* demands of arbitration clauses. In the end, *Chilutti* simply imposes a heightened burden on arbitration, which the FAA and Supreme Court case law flatly prohibit.

### C. Matthew Sessoms Is Bound by the Arbitration Agreement.

TaxAct showed that Matthew Sessoms is bound to arbitrate under the doctrines of equitable estoppel, third-party beneficiary, and agency. Mot. 14-16. Nothing about that is changed by his new argument that he authorized his spouse, Krysta Sessoms,[2] to file his tax returns on his behalf instead of doing so himself. Opp. 20-21.

Importantly, Matthew does not dispute that Krysta (using Matthew's account) affirmatively checked the checkbox upon e-filing his individual tax returns for TY 2020 and TY 2021, and again (using her own account) upon e-filing their joint tax return for TY 2022. *See* Jaeger Decl. Exs. K, L. Nor does he dispute that Krysta must have input his self-created PIN and date of birth to e-file their joint tax return for TY 2022. *Id.*, Ex. M. Instead, although Matthew acknowledges that he "gave Krysta permission to prepare [his] tax returns," Mathew Sessoms Decl. in Support of Opp'n to Mot. to Compel ("Sessoms Decl.") ¶ 6, he did not specifically instruct her on how to go about filing the tax returns. As discussed below, that is irrelevant.

Equitable estoppel. Matthew's contention that the record is "bereft of any evidence" that he knowingly embraced the Terms is absurd. Opp. 14. As noted, he does not dispute that he (or his wife) affirmatively checked the checkbox multiple times. *See* Mot. 11, 13. (discussing Jaeger Decl.). Moreover, he gave Krysta broad "permission to prepare [his] tax returns." Sessoms Decl. ¶ 6; Jaeger Decl. Ex. M. And he obviously shared personal information with Krysta to allow her to create *his* account and file on his behalf (and then eventually jointly). Jaeger Decl. ¶ 21 & Ex. M. As such, he was aware that Krysta would need to disclose his personal information to file his

---

[2] To avoid confusion, TaxAct refers to each Matthew and Krysta Sessoms by their first names.

taxes, and that he gave her explicit or implied permission to do so. In other words, he "knowingly exploit[ed]" his wife's contract with TaxAct by "seeking and obtaining" the direct benefit of having his taxes filed for multiple years. *Griswold v. Coventry First LLC*, 762 F.3d 264, 272 (3d Cir. 2014).[3]

Third-party beneficiary. Matthew claims that he is not a third-party beneficiary because his claims "arise under federal and state law" instead of the Terms. Even if this Court could decide issues of scope (which, as discussed in Section III, *infra*, it cannot), this argument fails. Plaintiffs rely on *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093 (9th Cir. 2023), but in *Jackson*, the Ninth Circuit held that a similar arbitration clause did not apply to the plaintiff's wiretapping and invasion of privacy claims because they were not "depend[ent] on any terms of his contract as a driver for Amazon Flex." *Id.* at 1102. There, even non-Flex drivers—i.e., those who had no contract with Amazon—could have asserted the same claims if they joined the subject Facebook group. *Id.* Not so here. TaxAct could only allegedly violate Pennsylvania's wiretap law or the federal prohibition on disclosure of taxpayer's tax return information with respect to users who engaged with its website or gave another permission to do so. Further, one of the few federal cases interpreting *Jackson* concluded that "[c]laims touch on contractual matters where factual allegations necessitate a review or interpretation of the contract." *Sri Trang Gloves (Thai.) Pub.*

[3] Plaintiffs cite cases involving arrangements that have no bearing on this situation, i.e., where one spouse authorizes another to conduct a transaction for the benefit of the authorizing spouse. For example, in *County of Monmouth v. Rite Aid Corp.*, No. 20-CV-2024, 2023 WL 2743552 (E.D. Pa. Mar. 31, 2023), the Court did not allow Rite Aid to hold an individual consumer to an arbitration provision in a contract solely between Rite Aid and a pharmacy benefits manager that did not mention the consumer. *Id*. at *1. In addition, *Trina Solar US, Inc. v. Jasmin Solar Pty Ltd.*, 954 F.3d 567 (2d Cir. 2020), involved a non-signatory that was the corporate parent of a subsidiary that signed a commercial contract, and "[s]hortly after the Contract was executed, [the counterparty] made clear that it viewed [the subsidiary], not [the parent company], as its client." *Id*. at 569.

*Co. v. Pac. Apex P'ship LLC*, 2:22-cv-09114-MCS-E, 2023 U.S. Dist. LEXIS 85802, at *9 (C.D. Cal. May 15, 2023) (citation omitted). That is clearly the case here because Plaintiffs argue that TaxAct's data sharing practices exceed what is allowed under its Terms, meaning that a review of the Terms is clearly necessary. *See* Opp. 1. Finally, Matthew further asserts that the doctrine is not applicable because the parties to the contract (TaxAct and Krysta) did not express an intention to benefit the third party (Matthew) in the contract itself. But this argument is baseless. Krysta obviously intended to benefit Matthew when she created an account under his name and filed his tax returns, both individually *on his behalf* (as express an intention to benefit him as there could be) and then jointly. TaxAct also contemplated benefits to individuals such as Matthew by offering joint filing services in the first place.

Agency. Matthew "gave Krysta permission to prepare [his] tax returns," and would have had to provide her a panoply of personal information such as his self-created PIN, date of birth, and relevant tax documents, so that she could file his tax returns (which she in fact did). *Id.* Matthew's claim that he would not have allowed his spouse to use TaxAct had he known about the Arbitration Agreement is a red herring. What Matthew *would have* done is inconsequential, as "authority emanates from the principal's action." *V-Tech Servs., Inc. v. Street*, 72 A.3d 270, 279 (Pa. Super. Ct. 2013). An objective analysis of his conduct demonstrates a manifestation of authority, establishing an agency relationship.

## II. ALL REMAINING DISPUTES ARE PROPERLY DELEGATED TO THE ARBITRATOR AND PLAINTIFFS' UNCONSCIONABILITY ARGUMENTS FAIL REGARDLESS.

### A. Disputes About Scope and Unconscionability Are Delegated to the Arbitrator.

Plaintiffs do not dispute TaxAct's showings that there is a delegation clause, and that parties may agree to delegate arbitrability. Mot. 21. Plaintiffs also do not dispute that the incorporation of an arbitral body's rules that contain a delegation clause—as the JAMS Rules do

here—substantially narrows the scope of this Court's review. *Id.* at 21-22. Any dispute about the scope of the Arbitration Agreement is a question about the "scope of the agreement under which Arbitration is sought" that the arbitrator is to decide. JAMS Streamlined Rule 8(b).

Plaintiffs' arguments about unconscionability run afoul of TaxAct's showing that the Supreme Court has admonished that, where a delegation clause exists, courts cannot entertain arguments about the unconscionability of the arbitration agreement as a whole, because the party opposing arbitration must "challenge[] the delegation provision specifically" for any court to decide the issue. *See, e.g.,* Mot. 9-10 & n.3; *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70-72 (2010) (the arbitrator is to decide unconscionability challenges that apply "to the contract as a whole" and not to the "delegation provision specifically"). Plaintiffs ignore this authority. Given the delegation clause, the Court cannot reach Plaintiffs' claims that the Arbitration Agreement as a whole is unconscionable—that issue is for the arbitrator to decide.

### B. Plaintiffs Fail to Prove Procedural or Substantive Unconscionability.

Even if the Court were permitted to consider Plaintiffs' unconscionability arguments on the merits (it isn't), Plaintiff's claims of unconscionability misinterpret the relevant law. *See* Opp. 25-29. An agreement must be both procedurally and substantively unconscionable to be invalidated. *See Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221 (3d Cir. 2012). Plaintiffs establish neither. They fail to present any meaningful argument that the Terms were procedurally unconscionable beyond, at best, obliquely implying that the Terms are a contract of adhesion that steer users away from reviewing the Arbitration Agreement. *See* Opp. 25. But that is insufficient. *See Salley v. Option One Mortg. Corp.*, 925 A.2d 115, 127 (Pa. 2007).[4] And Plaintiffs' arguments on substantive unconscionability also fail for multiple reasons.

---

[4] Plaintiffs also ignore elements of the Terms which cut against procedural unconscionability. For instance, Plaintiffs ignore the fact that they could have opted out of the arbitration without

*First*, Plaintiffs claim that the Terms do not meet JAMS Consumer Arbitration Fairness Standards. *See* Opp. 25 n.9. That is wrong. The Terms' express adoption of JAMS's rules indicates an intent to adhere to JAMS's requirements, and those Terms are explicit that the arbitrator has the authority to grant any remedy available under federal, state, or local laws—thus, not depriving Plaintiffs of essential rights. Jaeger Decl. Ex. G at 4.

*Second*, while Plaintiffs claim that TaxAct's limitation of liability provision renders the Terms unconscionable, *see* Opp. 26, they explicitly state that applicable damages must be decided "to the fullest extent permitted by applicable law." Jaeger Decl. Ex. G at 3. In any event, any ambiguities in the language of an arbitration agreement must be decided by the arbitrator. *Quilloin*, 673 F.3d at 231; *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 406–07 (2003).

*Third,* Plaintiffs contend that the contractual limitations period is unconscionable simply because it is a shorter time period than the statutes governing their claims allow. Opp. 27. But the Third Circuit has recognized that "a provision limiting the time to bring a claim or provide notice of such a claim to the defendant is not necessarily unfair or otherwise unconscionable." *Alexander v. Anthony Int'l., L.P.*, 341 F.3d 256, 266 (3d Cir. 2003). The only requirement is that the "time period must still be reasonable," *id.*—and Plaintiffs say nothing on that front.[5]

---

consequence, undercutting any claim of oppression. *See e.g.*, *Clerk v. ACE Cash Express, Inc.*, No. 09-cv-05117, 2010 WL 364450, at*8–10 (E.D. Pa. Jan. 29, 2010) (arbitration provision was not procedurally unconscionable based on the inclusion of a 30–day opt-out clause).

[5] The cases that Plaintiffs cite, such as *Alexander*, are easily distinguishable. There, the limitation was only 30 days. *Id*. at 259. TaxAct's more generous provision of one year compared to the two-year limitation of Plaintiffs' claims is reasonable. Moreover, Pennsylvania courts regularly enforce other states' shorter statutes of limitations through its borrowing statute, PA ST 42 Pa.C.S.A. § 5521. *See, e.g.*, *Karagiannis v. Shaffer*, 96 F. Supp. 211 (W.D. Pa. 1951) (applying Alabama's one-year statute of limitations rather than Pennsylvania's two-year statute of limitations); *Johnson v. SmithKline Beecham Corp.*, 95 F. Supp. 3d 819 (E.D. Pa. 2015), *affirmed sub nom*, 636 Fed. App'x 87 (3d Cir. 2016) (applying Louisiana's one-year statute of limitations rather than Pennsylvania's two-year statute of limitations).

*Fourth*, Plaintiffs incorrectly apply Pennsylvania law in asserting that the class action waiver in the Terms is unconscionable. The case Plaintiffs cite for support—*Quilloin*, 673 F.3d at 232-33—stands for the exact *opposite* proposition. *See* Opp. 27-28.[6]

*Fifth,* Plaintiffs claim that TaxAct designed its website to steer users to accept the Arbitration Agreement without reading it (rendering the Arbitration Agreement both procedurally and substantively unconscionable). *See* Opp. 28. That ignores that the Arbitration Agreement (including its opt-out provision) was indicated by a prominent heading in the Terms, and that key portions of the Arbitration Agreement were written in bold font. And the opt-out provision gave Plaintiffs the opportunity to opt out of arbitration without any penalty.

*Sixth* and finally, the arbitral forum is not "prohibitively expensive" or burdensome such that it would be a significant hindrance for Plaintiffs. *See Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 284 (3d Cir. 2004). Plaintiffs claim that they would have to pay travel expenses, yet JAMS Rules permit arbitrators to conduct hearings remotely which would make this immaterial. JAMS Streamlined Rule 17(g).[7]

## III. CONCLUSION

For the reasons set forth above and in TaxAct's opening brief, the Court should order that Plaintiffs' claims against TaxAct be addressed through individual arbitration pursuant to 9 U.S.C. § 4 and/or stay proceedings pending arbitration pursuant to 9 U.S.C. § 3.

---

[6] In *Quilloin*, the Third Circuit held that a Pennsylvania law finding class action waivers was substantively unconscionable where "class action litigation is the only effective remedy" is "clearly preempted" by the FAA and the case precedent*.* *Quilloin*, 673 F.3d at 233 (citations omitted). Plaintiffs' argument is also contrary to the Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) (on which the *Quilloin* court relied), which held that a California law deeming certain class action waivers to be unconscionable was an "obstacle to the accomplishment and execution" of the FAA, and was therefore "inconsistent with" and preempted by the FAA. *See* 563 U.S. at 343, 352. In addition, class actions are not the only effective remedy here: individual arbitration is available. Plaintiffs do not dispute this reality.

[7] Plaintiffs' claim that TaxAct has raised an Article III issue is incorrect. *See* Mot. 26 n.11.

Dated: December 8, 2023

Respectfully submitted,

/s/ *James W. Ducayet*

James W. Ducayet (*pro hac vice*)
jducayet@sidley.com
Ankur Shingal (*pro hac vice*)
ashingal@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853 7000
Facsimile: (312) 853 7036

Tyson Y. Herrold (314262)
BAKER & HOSTETLER LLP
1735 Market Street, Suite 3300
Philadelphia, PA 19103
Telephone: (215) 564-3286
therrold@bakerlaw.com
*Attorneys for Defendant TaxAct, Inc.*

**CERTIFICATE OF SERVICE**

I, James W. Ducayet, certify that on this 8th day of December 2023, I caused the foregoing Motion to Compel Arbitration and Stay Proceedings Pursuant to 9 U.S.C. § 3, including accompanying Memorandum of Law and Declaration of Mark Jaeger, to be filed on the Court's ECF system where it is available for viewing and downloading.

*/s/ James W. Ducayet*
James W. Ducayet