UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES KIRKHAM and MATTHEW SESSOMS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TAXACT, INC.,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Civil Action No.: 2:23-CV-3303-WB<br><br>**ECF CASE**<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT TAXACT, INC.'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND OPPOSITION TO PLAINTIFFS' MOTION FOR PROTECTIVE ORDER UNDER FED. R. CIV. P. 23(D)**

## TABLE OF CONTENTS


INTRODUCTION ..... 1

BACKGROUND ..... 2

I. Plaintiffs Agreed to Prior Versions of the Terms, Which Require Arbitration of Plaintiffs' Claims That Arose During the Putative Class Period Ending on November 22, 2023. ..... 2

II. TaxAct Adopted the Updated Terms As Part of Its Routine Business Practices, and the Updated Terms Contain Limited Changes. ..... 2

A. Section 13. Dispute Resolution; Informal Resolution; Class Waiver; Binding Arbitration; Coordination of Claims & Termination of Rights. ..... 3

B. Section 14. Jurisdiction and Venue. ..... 4

C. New Provision: Section 9. Release for Operation and Use of the Services. ..... 4

III. TaxAct Will Not Enforce the Updated Terms Against Plaintiffs, the Putative Class, or a Potential Certified Class. ..... 5

ARGUMENT ..... 5

I. Applicable Legal Standards ..... 5

A. Motion to Compel Arbitration ..... 5

B. Motion for Protective Order. ..... 6

II. The Updated Terms Have No Impact on Plaintiffs' Prior Agreement to Arbitrate. ..... 7

A. The 2020 Terms Are Supported by Consideration and Enforceable. ..... 7

B. The 2020 Terms Delegate Questions of Interpretation to the Arbitrator. ..... 9

III. A Protective Order Is Unnecessary and Unwarranted. ..... 11

A. TaxAct's Issuance of the Updated Terms Was a Normal Business Practice That Does Not Interfere With Any Putative Class Members' Rights. ..... 11

B. The Updated Terms Are Not Coercive. ..... 13

C. Plaintiffs' Cited Authority Is Distinguishable. ..... 15

D. The Updated Terms Do Not Interfere With the Putative Class Members' Attorney-Client Relationship. ..... 16

E. Even if the Court Is Inclined to Issue a Protective Order, Plaintiffs' Requested Relief Is Overbroad. ..... 18

CONCLUSION ..... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blair v. Scott Specialty Gases*,
283 F.3d 595 (3d Cir. 2002)........8

*Blake v. JPMorgan Chase Bank, N.A.*,
No. CV 13-6433, 2018 WL 2359307 (E.D. Pa. May 24, 2018)........7

*Bobryk v. Durand Glass Mfg. Co.*,
No. 12-CV-5360 NLH/JS, 2013 WL 5574504 (D.N.J. Oct. 9, 2013)........7

*Braun v. Wal-Mart Stores, Inc.*,
60 Pa. D. & C.4th 13 (Com. Pl. 2003)........17

*Cada v. Costa Line, Inc.*,
93 F.R.D. 95 (N.D. Ill. 1981)........20

*Chilutti v. Uber Tech., Inc.*,
300 A.3d 430 (Pa. Super. 2023)........6, 9, 15

*In re Cmty. Bank of N. Va.*,
418 F.3d 277 (3d Cir. 2005)........7

*Cobell v. Norton*,
212 F.R.D. 14 (D.D.C. 2002)........12

*Crump v. MetaSource Acquisitions, LLC*,
373 F. Supp. 3d 540 (E.D. Pa. 2019)........7, 8, 9

*In re Currency Conversion Fee Antitrust Litig.*,
361 F. Supp. 2d 237 (S.D.N.Y. 2005)........12, 15, 16

*Dondore v. NGK Metals Corp.*,
152 F. Supp. 2d 662 (E.D. Pa. 2001)........17

*Feldman v. Google, Inc.*,
513 F. Supp. 2d 229 (E.D. Pa. 2007)........5

*Friedman v. Intervet Inc.*,
730 F. Supp. 2d 758 (N.D. Ohio 2010)........19

*Gates v. Rohm & Haas Co.*,
No. CIV. A. 06-1743, 2006 WL 3420591 (E.D. Pa. Nov. 22, 2006)........17

*Gulf Oil Co. v. Bernard*,
452 U.S. 89 (1981).....6, 18

*Hampton Hardware, Inc. v. Cotter & Co.*,
156 F.R.D. 630 (N.D. Tex. 1994).....12, 19

*Harris v. Green Tree Fin. Corp.*,
183 F.3d 173 (3d Cir. 1999).....8

*HealthplanCRM, LLC v. AvMed, Inc.*,
458 F. Supp. 3d 308 (W.D. Pa. 2020).....6

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. ___, 139 S. Ct. 524 (2019).....10

*Kindred Nursing Ctrs. Ltd. P'ship v. Clark*,
581 U.S. 246 (2017).....6, 9

*Law Offices of Leonard I. Desser, P.C. v. Shamrock Commc'ns*,
Inc., No. CIV. JKB-12-2600, 2013 WL 2552141 (D. Md. June 10, 2013).....11

*In re Lyon Fin. Servs., Inc.*,
257 S.W.3d 228 (Tex. 2008).....8, 9

*McKee v. Audible, Inc.*,
No. 17-1941, 2018 WL 2422582 (C.D. Cal. Apr. 6, 2018).....16, 18

*Montgomery v. Aetna Plywood, Inc.*,
No. 95 C 3193, 1996 WL 189347 (N.D. Ill. Apr. 16, 1996).....11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983).....10

*O'Connor v. Uber Techs., Inc.*,
No. C-13-3826 EMC, 2013 WL 6407583 (N.D. Cal. Dec. 6, 2013).....13

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63 (2010).....10

*Rochlin v. Cincinnati Ins. Co.*,
No. IP00-1898-CH/K, 2003 WL 21852341 (S.D. Ind. July 8, 2003).....12

*Sam Houston Elec. Coop., Inc. v. Berry*,
582 S.W.3d 282 (Tex. App. 2017).....8

*In re Sch. Asbestos Litig.*,
842 F.2d 671 (3d Cir. 1988).....18

*Singh v. Uber Techs. Inc.*,
939 F.3d 210 (3d Cir. 2019)....................10

*Texas Gas Util. Co. v. Barrett*,
460 S.W.2d 409 (Tex. 1970)....................8

*Tolmasoff v. Gen. Motors, LLC*,
No. 16-11747, 2016 WL 3548219 (E.D. Mich. June 30, 2016) ....................12

*Wang v. Chinese Daily News, Inc.*,
623 F.3d 743 (9th Cir. 2010) ....................12

*Weller v. Dollar Gen. Corp.*,
No. CV 17-2292, 2019 WL 1045960 (E.D. Pa. Mar. 4, 2019)....................17

*Williams v. U.S. Dist. Court*,
658 F.2d 430 (6th Cir. 1981) ....................20

**Statutes & Rules**

9 U.S.C. §§ 1-16, Fed. Arbitration Act of 1947 (FAA)....................6, 9, 10, 15

Fed. R. Civ. P. Rule 23 ....................2, 7, 20

Fed. R. Civ. P. 23(d) .................... *passim*

Pa. R.P.C., Rule 4.2 ....................16

**Other Authorities**

Manual for Complex Litigation § 21.12 (4th ed. 2004)....................6

## INTRODUCTION

TaxAct moved to compel arbitration and stay proceedings on November 10, 2023 ("Motion to Compel Arbitration"), and that motion has been fully briefed since December 8, 2023. TaxAct's Motion to Compel Arbitration encompasses all of Plaintiffs' claims that arose through November 22, 2023, under TaxAct's Terms of Service and License Agreement that went into effect on November 17, 2020 (the "2020 Terms"). Plaintiffs now move for a protective order under Federal Rule of Civil Procedure 23(d) ("Motion") against TaxAct's Terms of Service and License Agreement that went to effect on December 22, 2023 (the "Updated Terms"), in an attempt to escape their obligation to arbitrate their dispute with TaxAct.

Plaintiffs' Motion is directed at a strawman, and is unnecessary for multiple reasons. Most notably, Plaintiffs largely disregard that TaxAct has agreed not to enforce the relevant provisions—Sections 9, 13, and 14, which Plaintiffs focus on in their motion—of the Updated Terms. *See* Pasternack Cert. in Support of Mot. ("Pasternack Cert.") Ex. C (Jan. 11, 2024), Dkt. No. 36-5. As TaxAct has explained to Plaintiffs, it has no intention of invoking the Updated Terms—which were revised as part of its normal business operations—to deprive the rights of *any* putative class member until it is determined that this case will proceed as a class action, and then only against those who are *not* members of any certified class. Nevertheless, Plaintiffs seek to use the Updated Terms as a backdoor way to assert additional arguments in response to TaxAct's Motion to Compel Arbitration, and they offer up unsupported and fanciful conjecture that putative class members would somehow be "coerced" by the Updated Terms—in spite of the fact that the relevant changes do not apply to the claims here and despite the clear and express right that users have to opt out of arbitration in both the 2020 Terms and the Updated Terms.

In short, nothing in the Updated Terms has any bearing on TaxAct's pending Motion to Compel Arbitration. Nor is there any justification under Rule 23 or the caselaw for the invasive and expansive relief Plaintiffs seek. The Motion should be denied.

## BACKGROUND

### I. Plaintiffs Agreed to Prior Versions of the Terms, Which Require Arbitration of Plaintiffs' Claims That Arose During the Putative Class Period Ending on November 22, 2023.

As TaxAct previously demonstrated (Dkt. Nos. 30-1, 33), Plaintiffs James Kirkham and Matthew Sessoms agreed to arbitration provisions, including a delegation clause, in effect at the time their claims against TaxAct arose. Dkt. No. 30-1 at 3-7. Those arbitration provisions were contained in then-current and prior version of the Terms, which fully encompass the claims in the governing Complaint and require sending those claims (defined in the Amended Complaint as using TaxAct's Services "up and until November 23, 2022") to arbitration. *Id*. at 1-3; Amended Compl. ¶¶ 66-67, 71-72. The Arbitration Agreement contains a delegation clause, which delegates all "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, *validity, interpretation or scope*" to the arbitrator. Dkt. 30-1 at 3-4 (emphasis added).

### II. TaxAct Adopted the Updated Terms As Part of Its Routine Business Practices, and the Updated Terms Contain Limited Changes.

Consistent with its routine business practices of periodically updating its terms of service, TaxAct adopted the Updated Terms on December 22, 2023. As with prior iterations, the Updated Terms require a customer to read and agree to the Updated Terms prior to using TaxAct's Services. *See* Pasternack Cert. Ex. B at 2. As discussed below, the Updated Terms contain limited modifications from the prior iteration (the "2020 Terms"). *Compare id.*, *with*; Jaeger

Decl. in Support of TaxAct's Mot. Compel Arbitration and Stay Proceedings ("Jaeger Decl."), Dkt. No. 30-10, Ex. G.

### A. Section 13. Dispute Resolution; Informal Resolution; Class Waiver; Binding Arbitration; Coordination of Claims & Termination of Rights.

Section 13 of the Updated Terms, which includes the arbitration section (the "Updated Arbitration Agreement"), largely tracks the prior version in the 2020 Terms. Consistent with prior versions, the Updated Arbitration Agreement defaults to the JAMS Streamlined Rules (which delegate issues of arbitrability to the arbitrator) and contains a provision that permits any customer to opt out of arbitration. Pasternack Cert. Ex. A at 7-9, Dkt. No. 36-3. The opt-out provision provides:

> You have the right to opt out of binding arbitration within 30 days of the date you first accepted the terms of this Section by sending an email to arbitration@taxact.com. In order to be effective, the opt-out notice must include your full name and clearly indicate your intent to opt out of binding arbitration.

*Id.*; Jaeger Decl., Dkt. No. 30-10, Ex. G. There is no penalty to a customer upon electing to opt out of the Updated Arbitration Agreement, and there are no other requirements for opting out.

The updated Section 13 also adds provisions designed to prevent an abuse of the process through so-called "mass arbitration." In particular, the Updated Arbitration Agreement requires that if twenty-five (25) or more similar disputes are asserted against TaxAct at or around the same time, TaxAct may, in its sole discretion, require the disputes to proceed in a court of competent jurisdiction in Dallas County, Texas, the location of its principal place of business and the site for arbitration under both the Updated Terms and the 2020 Terms. *Id*. Further, should TaxAct decide not to proceed in court, the Updated Arbitration Agreement provides for

"batching procedures" which are designed to "reduce the costs and gain efficiencies associated with litigating multiple cases." *Id.*[1]

**B. Section 14. Jurisdiction and Venue.**

Section 14 of the Updated Terms addresses jurisdiction and venue, and provides that any dispute not subject to arbitration, or which cannot be heard in small claims court, will be resolved in a court sitting in Dallas, Texas. *Id.* The only update to Section 14 from prior versions is to clarify that any such claims will be resolved "on an individual basis exclusively." *Id.*; Jaeger Decl., Dkt. No. 30-10, Ex. G.

**C. New Provision: Section 9. Release for Operation and Use of the Services.**

Finally, Section 9 of the Updated Terms contains a release provision that requires customers to "release TaxAct from responsibility, liability, claims, demands, and/or damages" that "arise out of or related to the acts or omissions of third parties ('**Third Party Disputes**')." Pasternack Cert. Ex. A at 5 § 9 (emphasis in original), Dkt. No. 36-3.

Section 9 is intertwined with Section 8 of the Updated Terms, which provides that: "TAXACT IS NOT LIABLE FOR THE CONTENT, ACCURACY, FUNCTIONALITY, OR ANY OTHER ASPECT OF ANY THIRD-PARTY OFFERINGS AND THAT TAXACT IS NOT RESPONSIBLE FOR THE ACTS, OMISSIONS, POLICIES, OR PROCEDURES OF ANY SUCH THIRD PARTY." Accordingly, in order for customers to use TaxAct's Services to file their taxes for the current tax year, the Terms require the release of *only* "Third Party Disputes," such as those involving transactions between a customer and third party, as

[1] Under the batching procedures, twenty-six (26) disputes are required to be selected to proceed to individual arbitration proceedings as part of a first batching process, thirteen (13) of which will be selected by the claimants and their coordinated counsel and thirteen (13) of which will be selected by TaxAct. *Id.* The remaining disputes cannot be filed or deemed filed in arbitration until they are selected to proceed to individual arbitration proceedings as part of the batching procedures. *Id.*

emphasized in Section 8. This case does not involve a third-party dispute; Plaintiffs are seeking relief based on TaxAct's own actions.

### III. TaxAct Will Not Enforce the Updated Terms Against Plaintiffs, the Putative Class, or a Potential Certified Class.

Before Plaintiffs filed their Motion, and in an effort to avoid unnecessary motion practice, TaxAct informed Plaintiffs that it is willing to formally stipulate that it would not enforce Sections 9, 13, and 14 against Plaintiffs or any members of any certified class. *See* Pasternack Decl. Ex. C, Dkt. No. 36-5. Indeed, in response to Plaintiff's demand, TaxAct's counsel specifically asked Plaintiffs' counsel to "please send us the language of a proposed stipulation" and stated as follows:

> TaxAct does not intend to enforce Sections 9, 13, and 14 against any member of any class that is certified in this case, and further agrees not to enforce those provisions against any TaxAct customer until such time as it is determined that this matter will proceed as a class action.

*See id.* Rather than attempt to engage in a sufficient meet and confer, Plaintiffs' counsel never responded to that email, and instead filed the Motion.

## ARGUMENT

### I. Applicable Legal Standards

#### A. Motion to Compel Arbitration

Despite Plaintiffs' repeated claims to the contrary (*see* Dkt. No. 31 at 10), the relevant agreement here is a clickwrap agreement. *See* Dkt. No. 30-1 at 18-20; Dkt. No. 33 at 2-3. As TaxAct has explained, courts evaluate clickwrap agreements like the one here through "traditional principles of contract law and focus on whether the plaintiff[ ] had reasonable notice of and manifested assent to the clickwrap agreement." *Feldman v. Google*, *Inc.*, 513 F. Supp. 2d 229, 236 (E.D. Pa. 2007). Moreover, courts will even enforce agreements that are not strictly clickwrap to the extent they provide a consumer with notice of contractual terms. *See*

*HealthplanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 332-34 (W.D. Pa. 2020) ("Thus, while not strictly 'clickwrap,' the agreement here similarly avoids the concerns regarding lack of notice and manifested assent that often lead courts to decline to enforce pure browsewrap agreements buried 'in obscure sections of a webpage that users are unlikely to see[.]'") (citation omitted).

In addition, courts evaluating assent to arbitration agreements pursuant to the Federal Arbitration Act ("FAA") must adhere to the "equal treatment" principle, which provides that "[a] Court may invalidate an arbitration agreement based on 'generally applicable contract defenses' like fraud and unconscionability, but not on legal rules that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 251 (2017) (internal quotation marks, citation omitted). As TaxAct explained in its reply brief, *Chilutti v. Uber Tech., Inc.*, 300 A.3d 430, 449-50 (Pa. Super. 2023), which purports to impose a heightened burden on arbitration clauses and on which Plaintiffs stake their argument, is preempted by the FAA (just as a nearly identical law in Kentucky was in *Kindred Nursing Ctrs. Ltd. P'ship*). *See* Dkt. No. 33 at 3-5.

**B. Motion for Protective Order**

Parties are generally allowed to communicate with putative class members prior to class certification. *See*, *e.g.*, *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 104 (1981) (holding that the district court improperly restrained a party's communication with class members and recognizing that "in many cases there will be no problem requiring remedies" limiting communications with a class); Manual for Complex Litigation § 21.12 (4th ed. 2004) ("Defendants and their counsel generally may communicate with potential class members in the ordinary course of business, including discussing settlement before certification."). "Plaintiffs bear the burden as the moving party to establish a 'clear record and specific findings' of 'abusive' communications threatening

the proper functioning of the litigation." *Bobryk v. Durand Glass Mfg. Co.*, No. 12-CV-5360 NLH/JS, 2013 WL 5574504, at *7 (D.N.J. Oct. 9, 2013) (quoting *Gulf Oil*). "[A] remedy should be restricted to the minimum necessary to correct the effects of improper conduct under Rule 23." *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 310 (3d Cir. 2005) (citing *Coles v. Marsh*, 560 F.2d 186, 189 (3d Cir. 1977)).

## II. The Updated Terms Have No Impact on Plaintiffs' Prior Agreement to Arbitrate.

Plaintiffs argue that, by updating its Terms, TaxAct has supposedly confirmed that the Arbitration Agreement with putative class members are not mutually binding and are therefore unenforceable because they "lack consideration." *See* Mot. at 7. This argument is without merit.

### A. The 2020 Terms Are Supported by Consideration and Enforceable.

As an initial matter, Plaintiffs' assertion that the Updated Terms demonstrate that the parties' agreement to arbitrate under the 2020 Terms is illusory and therefore lacks "consideration" makes no sense given that TaxAct has agreed it will not seek to enforce the Updated Terms against any member of any certified class. As such, the 2020 Terms apply here, not the Updated Terms. And Plaintiff forfeited any argument that the 2020 Terms "lack consideration" by failing to raise this issue in its opposition to TaxAct's Motion to Compel Arbitration.[2] *See Blake v. JPMorgan Chase Bank, N.A.*, No. CV 13-6433, 2018 WL 2359307, at *1 (E.D. Pa. May 24, 2018) (holding argument forfeited when they failed to do so in "their voluminous opposition to defendants' motion to dismiss").

In any event, Plaintiffs' argument about a supposed lack of consideration as to either the 2020 Terms based on the Updated Terms is meritless. Plaintiffs note that the Updated Terms

[2] Plaintiffs did not cite *Crump v. MetaSource Acquisitions, LLC*, 373 F. Supp. 3d 540 (E.D. Pa. 2019) in its opposition brief, (Dkt. No. 31), and indeed, the word "consideration" appears only once, without any argument that the relevant agreements here lacked it.

provide TaxAct with the right to elect to opt a dispute out of arbitration and assert that "this confirms that arbitration is not mutually binding and supported by consideration." Mot. at 16. But this ignores that Plaintiffs and putative class members are themselves able to opt out of arbitration without penalty by exercising an option under the Updated Terms, just as they were able to do under the 2020 Terms. Dkt. No. 36-3 at 8. And it ignores Third Circuit law, which has long held that "a contract need not have mutuality of obligation as long as the contract is supported by consideration." *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 180 (3d Cir. 1999) (reversing district court and finding contract enforceable where one party had option to litigate arbitral issues in court, while the other party was required to invoke arbitration, because mutuality is not required where the requirement of consideration is met, and noting "as long as the requirement of consideration is met, mutuality of obligation is present, even if one party is more obligated than the other"); *see also Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002) (holding that an arbitration provision added to an employee handbook was supported by adequate consideration and was enforceable).

*Crump v. MetaSource Acquisitions*, on which Plaintiffs heavily rely, is not to the contrary. In the first place, *Crump* involved Pennsylvania law, which does not apply here. Under Texas law, which governs the Arbitration Agreements in both the 2020 Terms and the Updated Terms, mutuality of obligation for arbitration clauses specifically is not required "so long as adequate consideration supports the underlying contract." *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 233 (Tex. 2008); *see also Sam Houston Elec. Coop., Inc. v. Berry*, 582 S.W.3d 282, 292 (Tex. App. 2017) ("[W]hen an arbitration clause is but one part of a larger underlying contract, the required consideration can be provided by the rest of the parties' mutual obligations."); *Texas Gas Util. Co. v. Barrett*, 460 S.W.2d 409, 412 (Tex. 1970) ("A contract will

be construed in favor of mutuality. The modern decisional tendency is against lending the aid of courts to defeat contracts on technical grounds of want of mutuality.") (internal citations omitted).[3] Moreover, *Crump* arose in the context of an employment agreement, not a consumer agreement, and the Court noted that the employee in that case had already been working at the company for about a week before even being presented with the employee handbook that contained the arbitration provision. 373 F. Supp. 3d at 543, 549. Here, by contrast, customers must agree to the terms as a condition of using TaxAct's services, consistent with the holdings in *Lyon* and *Sam Houston Electric Cooperative.* And the Updated Terms are consistent with *Crump* in any event. *Crump* involved an employment agreement in which the employer contractually reserved the right to unilaterally modify any of the terms of the employment contract without notice. 373 F. Supp. 3d at 546. That is not the case here. TaxAct's 2020 Terms provide that TaxAct will provide notice of any changes and that a user's continued use of TaxAct's Services will confirm their acceptance. *See* Pasternack Cert. Ex. A, Dkt. 36-3 at 5. The same is true of the Updated Terms. Dkt. 36-3 at 5. In sum, Plaintiffs' reliance on *Crump* is misplaced.

### B. The 2020 Terms Delegate Questions of Interpretation to the Arbitrator.

As TaxAct has established, the 2020 Terms contain a delegation clause. *See* Dkt. No. 31-1 at 3-4. So do the Updated Terms. *See* Dkt. 35-3 at 7 ("As limited by the FAA, this Agreement and the JAMS Rules, the arbitrator will have exclusive authority to make all procedural and substantive decisions regarding any Dispute and to grant any remedy that would otherwise be available in court."). Parties may "agree to arbitrate 'gateway' questions of

[3] As TaxAct previously explained, Plaintiffs' reliance on *Chilutti*, 300 A.2d 430 for a purported "more demanding" standard for arbitration under Pennsylvania law is unavailing in light of the U.S. Supreme Court's decision in *Kindred Nursing*, which rejected a nearly identical state court decision in Kentucky as a violation of the "equal treatment" principle under the Federal Arbitration Act. 581 U.S. 246 at 25. Plaintiffs do not acknowledge, much less attempt to address, *Kindred Nursing* in their Motion.

'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy," and "the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-70 (2010); *see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 67-69 (1983) (arbitrability questions can be delegated to the arbitrator so long as the delegation is clear).

Plaintiffs claim that the Updated Terms may apply to their claims rather than the 2020 Terms (despite TaxAct's offering a stipulation that clearly indicates otherwise) and also suggest that the Updated Terms, like the 2020 Terms, are "unconscionable." But these are matters that the parties have agreed are for the arbitrator to decide rather than this Court, and Plaintiffs do not specifically challenge the delegation provision in either the Updated Terms or the 2020 Terms. As such, Plaintiffs' arguments are not for this Court to decide. *See, e.g.*, *Rent-A-Center,* 561 U.S. at 71-72 (where litigant does not specifically challenge a delegation clause, arbitrator is to decide unconscionability challenges that apply "to the contract as a whole"); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. ___, 139 S. Ct. 524, 530 (2019) ("[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue."); *Singh v. Uber Techs. Inc.*, 939 F.3d 210, 215 (3d Cir. 2019) ("Where such a [delegation] clause is included, courts cannot decide threshold questions of arbitrability 'unless a party challenge[s] the delegation clause [specifically] and the court concludes that the delegation clause is not enforceable.'") (*quoting MacDonald v. CashCall, Inc.*, 883 F.3d 220, 226 (3d Cir. 2018)).

In short, Plaintiffs' effort to use the Updated Terms to offer up additional arguments in opposition to TaxAct's Motion to Compel Arbitration fails. The Updated Terms are irrelevant to the current dispute, and in any event, do not support Plaintiffs' assertion that they did not validly

agree to arbitrate their claims here. Further, Plaintiffs' arguments are delegated to the arbitrator in the first instance.

## III. A Protective Order Is Unnecessary and Unwarranted.

Because the Updated Terms have no bearing on this dispute, no protective order is warranted or appropriate. Plaintiffs seek a protective order under Rule 23(d) based on their claim that the Updated Terms are misleading, abusive, and coercive, and interfere with putative class members' attorney-client relationship. That claim disregards the routine business nature of the updates, the limited impact of the Updated Terms given the actual language of the Updated Terms, TaxAct's agreement not to use the Updated Terms to deny any putative class member their rights to proceed in this litigation, should it proceed as a class action, and the reasoning underlying Plaintiffs' cited authority.

### A. TaxAct's Issuance of the Updated Terms Was a Normal Business Practice That Does Not Interfere With Any Putative Class Members' Rights.

TaxAct, like any other company, is permitted to engage in normal business practices such as updating its customer-facing terms and conditions, notwithstanding the pendency of a putative class action. *See, e.g.*, *Law Offices of Leonard I. Desser, P.C. v. Shamrock Commc'ns*, Inc., No. CIV. JKB-12-2600, 2013 WL 2552141, at *2 (D. Md. June 10, 2013) ("Of course, the Court has no desire to limit Defendant's communications with anyone when those communications relate to routine business matters, and those will remain unaffected by the Court's order."); *Montgomery v. Aetna Plywood, Inc.*, No. 95 C 3193, 1996 WL 189347, at *6 (N.D. Ill. Apr. 16, 1996) ("Defendants' counsel will be prohibited from contacting members of the class regarding this litigation absent the consent of counsel for the class member. As stated, the prohibition only applies to communications regarding the litigation. There is no prohibition on other communications, including communications necessary to conduct the daily business of Aetna

Plywood.") (footnote omitted); *Cobell v. Norton*, 212 F.R.D. 14, 20 (D.D.C. 2002) ("Defendants will be permitted to continue engaging in the regular sorts of business communications with class members that occur in the ordinary course of business. The Court does not find such communications objectionable because they do not purport to extinguish the rights of the class members in this litigation."); *Rochlin v. Cincinnati Ins. Co.*, No. IP00-1898-CH/K, 2003 WL 21852341, at *20 (S.D. Ind. July 8, 2003) ("courts have also recognized that communications with class members in the ordinary course of business are permissible and appropriate."); *Tolmasoff v. Gen. Motors, LLC*, No. 16-11747, 2016 WL 3548219, at *12-15 (E.D. Mich. June 30, 2016) (holding that General Motors' updated terms and conditions after the commencement of the class action litigation were not coercive or misleading).

Nonetheless, Plaintiffs assert that TaxAct's routine updating of its Terms requires issuance of a protective order under Federal Rule of Civil Procedure 23(d). Mot. at 7, 17-20. But the Updated Terms do not even mention the litigation, and certainly do not present a biased view of it. *Compare Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 756 (9th Cir. 2010) ("[M]isleading communications to class members *concerning the litigation* pose a serious threat to the fairness of the litigation process.") (emphasis added, citation omitted), *cert. granted, judgment vacated on other grounds*, 565 U.S. 801 (2011); *Hampton Hardware, Inc. v. Cotter & Co.*, 156 F.R.D. 630, 632 (N.D. Tex. 1994) (holding that letters from the defendant to potential class members were improper because they actively discouraged participation in the lawsuit and claimed that participation would be inordinately expensive.). Indeed, courts often impose restrictions based on their authority to exercise control over a class action pursuant to Rule 23(d) to communications *about* the litigation. *See, e.g.*, *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 253 (S.D.N.Y. 2005) ("Indeed, when a defendant contacts putative class

members for the purpose of altering the status of a pending litigation, such communication is improper without judicial authorization."). Plaintiffs' cited cases involve communications specifically about the litigation, not about unrelated matters such as updates to terms and conditions that impact all customers, whether they happen to be putative class members or not.

Plaintiffs' reliance on *O'Connor v. Uber Techs., Inc.,* No. C-13-3826 EMC, 2013 WL 6407583, at *5 (N.D. Cal. Dec. 6, 2013), for the contention that the Updated Terms are "used as a means to thwart existing class action litigation" by interfering with the rights of putative class members is unavailing. *See* Mot. at 14. There, the plaintiffs brought a motion for protective order to strike the arbitration clause that Uber issued to its drivers after class action litigation had been filed against Uber. *See O'Connor*, 2013 WL 6407583, at *1-2, *6. The court granted plaintiffs' relief in part, holding that the communication did not advise the drivers that they were losing their ability to participate in the *pending* lawsuit if they assented, and because the opt-out provision was onerous because it required "Uber drivers to send a letter via *hand delivery or overnight mail* to Uber's general counsel." *Id*. at *6-7 (emphasis in original).

None of those factors exist here. Uber was attempting to impose a new arbitration requirement where one had not existed before, and to apply that new arbitration provision to individuals in the pending lawsuit. That is the opposite of the situation here, as TaxAct has made clear that it will *not* employ the Updated Terms against any class members if a class were to be certified or against putative class members unless and until a class is certified. Moreover, the opt-out procedure here (sending an email) is not onerous as was the one that Uber imposed in that case.

**B. The Updated Terms Are Not Coercive.**

Plaintiffs' assertion that the Updated Terms are "coercive" is nonsensical. Even if TaxAct had not agreed to not apply the Updated Terms retroactively to this action, nothing in the

Updated Terms is relevant here. The release in Section 9—which does not in any way affect the pending Motion to Compel Arbitration—is limited to "Third Party Disputes" that arise out of or are related to the acts or omissions of third parties. Here, because all of Plaintiffs' claims are based on alleged acts or omissions of TaxAct itself, Section 9 does not apply to this case. When read in context, it is clear that Section 9 must be read in tandem with Section 8, which disclaims any responsibility for the actions of third parties. That is why TaxAct agreed not to enforce the Updated Terms against any putative class members or certified class members but reserved the right to apply it otherwise; those who chose to exercise their rights to arbitrate could chose to bring a broader set of claims than brought here. For this reason, there is nothing to support Plaintiffs' claim that putative class members may believe "they have relinquished any claims they may have." Mot. at 17. And the provisions of Sections 13 and 14 apply only to arbitrations, which are irrelevant to the putative class that Plaintiffs are seeking to represent, who have not filed for arbitration (and, if the case proceeds and the class is certified, presumably will never do so). In short, the modified terms will not apply to any individual who is ultimately bound by any judgment of this Court.

Moreover, TaxAct will not seek to enforce the Updated Terms against any putative class members until the Court determines that that this matter will proceed as a class action. As such, no putative class member will be impacted until then, and, should the case proceed and a class be certified, any notice to the class can advise class members of their right to opt out and the possible consequences of doing so at that time, rather than now. And in any event, any putative class members who currently wish to opt out of arbitration remain free to do so. Plaintiffs falsely claim that "TaxAct failed to notify" users that "they can opt out of this Agreement." Mot. at 18. As noted above, however, Section 13 of all versions of the Terms provides that users have the

right to opt out of binding arbitration—without any penalty—within 30 days of the date they first accepted the arbitration provision by sending an email to arbitration@taxact.com. *See* Background § II.A, *supra*.

Finally, Plaintiffs claim that the Updated Terms are coercive because TaxAct "chose not to comply" with the requirement set forth in *Chilutti* that it provide an explicit statement to users that they are waiving their right to a jury trial. (Mot. at. 17) (quoting *Chilutti*). As noted above, *Chilutti* does not apply here because it is preempted by the FAA. *See* Argument § I.A. Even if *Chilutti* was not preempted, Plaintiffs' claim is false. The Updated Terms, like the 2020 Terms, prominently note that users are waiving their jury trial rights. Section 13 cautions customers to

> PLEASE READ THE FOLLOWING SECTION CAREFULLY BECAUSE IT LIMITS CERTAIN LEGAL RIGHTS, INCLUDING THE RIGHT TO A JURY TRIAL, THE RIGHT TO PARTICIPATE IN ANY FORM OF CLASS, COLLECTIVE, OR REPRESENTATIVE CLAIM, DISPUTE OR ACTION, AND THE RIGHT TO CERTAIN REMEDIES AND FORMS OF RELIEF. Other rights that we or you would have in court, such as an appellate review, also may not be available in the arbitration process described within this section.

Pasternack Cert. Ex. A, Dkt. 36-3 at 7. As such, unlike in *Chilutti*, TaxAct did not fail to inform its customers that they are "waiving a right to a jury trial when they agree to the company's 'terms and conditions[.]'" *Chilutti*, 300 A.3d at 449-50.

### C. Plaintiffs' Cited Authority Is Distinguishable.

None of the cases upon which Plaintiffs rely involve a proposed stipulation like the one here. *See* Mot. 21-26. For instance, Plaintiffs heavily cite to *Currency Conversion* for the proposition that the Updated Terms are misleading, abusive, and coercive, including because TaxAct and the putative class had an "ongoing business relationship." 361 F. Supp. 2d 237. But unlike in that case, TaxAct does not seek to retroactively and improperly alter the rights of any existing litigants before the court. In *Currency Conversion*, , the court held that the defendants'

adding a mandatory provision where there was not one before amounted to an improper communication because it was done "for the purpose of altering the status of [the] pending litigation," and "eliminate putative class members' rights in this litigation." 361 F. Supp. 2d 237, 253-54, 267. Here, by contrast, TaxAct has explicitly stated that the Updated Terms will not alter the rights of any class member.

Nor is there merit to the hypothetical situation Plaintiffs posit (Mot. at 15 n.1, 22) about a former customer logging into their TaxAct account to obtain a copy of a previously-prepared tax return. Unlike *McKee v. Audible, Inc.*, No. 17-1941, 2018 WL 2422582 (C.D. Cal. Apr. 6, 2018), where a customer's refusal to agree to the updated Conditions of Use would require them to forfeit whatever credit they had with Audible, here, customers who do not agree to the Updated Terms would not forfeit anything, as they are already provided with an explicit opt-out notice and instructions. As described above, the opt-out provision for TaxAct users has remained the same, and there are no consequences to exercising that option. Pasternack Cert. Ex. A, Dkt. 36-3. As such, under Plaintiffs' hypothetical, all that a former TaxAct customer needs to do to get a copy of a prior tax return without being subject to the Arbitration Agreement is to follow the procedure in Section 13 for opting out.

**D. The Updated Terms Do Not Interfere With the Putative Class Members' Attorney-Client Relationship.**

Plaintiffs also contend that the Court's supervision is necessary because TaxAct's "communications" with putative class members interfere with the putative class members' attorney-client relationship. This argument is wrong. TaxAct does not dispute that attorneys may not communicate with represented parties "about the subject of representation." Pa. R.P.C., Rule 4.2. But that is not at all what happened here. On December 22, 2023, TaxAct updated its Terms on a go-forward basis for the beginning of the upcoming year, consistent with its

historical practice and with routine business practice. TaxAct posted the Updated Terms on its public-facing website, just as it has always done. Then, when Plaintiffs' counsel reached out to TaxAct's counsel in January 2024 regarding the Updated Terms, TaxAct's counsel informed Plaintiffs' counsel that TaxAct does not intend to enforce Sections 9, 13, and 14 against Plaintiffs, the putative class, or the certified class. A routine business communication made via a company's website that does not even apply to the claims at issue in this putative class action cannot possibly "interfere" with the attorney-client relationship between Plaintiffs' counsel and putative class members. Indeed, Plaintiffs fail to cite any authority indicating otherwise with a similar fact pattern.

The cases that Plaintiffs do cite are inapposite, as they involve improper attempts to interview or communicate with a discrete set of putative class members. *See Dondore v. NGK Metals Corp.*, 152 F. Supp. 2d 662, 666 (E.D. Pa. 2001) (defense counsel prohibited from contacting or interviewing potential fact witnesses who were putative class members in a class action concerning the same matter, without the consent of counsel for the named plaintiffs in that action), *on reconsideration*, No. CIV. A. 00-1966, 2001 WL 516635 (E.D. Pa. May 16, 2001); *Weller v. Dollar Gen. Corp.*, No. CV 17-2292, 2019 WL 1045960, at *1 (E.D. Pa. Mar. 4, 2019) (defense counsel visited employees in person, interviewed various employees, and obtained declarations from some of them to support opposition to the plaintiff's motion to certify a class); *Gates v. Rohm & Haas Co.*, No. CIV. A. 06-1743, 2006 WL 3420591, at *2 (E.D. Pa. Nov. 22, 2006) (names and addresses of putative class members in environmental contamination lawsuit were discoverable by defendant corporations, although defendants were prohibited from contacting and interviewing those putative class members); *Braun v. Wal-Mart Stores, Inc.*, 60 Pa. D. & C. 4th 13 (Com. Pl. 2003) (holding that "any discussion with current or former

employees concerning the subject matter of this law suit should be done within the parameters of formal discovery").

Where, as here, the communication in question is a routine business communication that addresses forward-looking claims rather than the claims that arose during the class period, Plaintiffs have failed to show that the Updated Terms constitute an attempt to communicate with putative class members about the subject of their representation. There has been no attempt to interfere with putative class members' attorney-client relationship, and any requested relief based on that theory should be denied.

### E. Even if the Court Is Inclined to Issue a Protective Order, Plaintiffs' Requested Relief Is Overbroad.

The Court should deny Plaintiffs' motion in its entirety for the reasons stated above. However, if the Court is inclined to grant some relief now, the Supreme Court in *Gulf Oil* "mandate[d] that 'an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties. . . . . [S]uch a weighing − identifying the potential abuses being addressed − should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances.'" *McKee*, 2018 WL 2422582, at *4 (quoting *Gulf Oil Co.*, 452 U.S. at 101-02); *see also In re Sch. Asbestos Litig.*, 842 F.2d 671, 684 (3d Cir. 1988) ("The findings and record before us support the imposition of an affirmative disclosure requirement limited to direct communications to members of the plaintiff class, but they simply do not support the expansive order entered in this case. We therefore hold that the district court lacked a proper basis under Rule 23(d) to issue [the respective order].").

Despite the Supreme Court's admonishment regarding the scope of any relief, Plaintiffs seek wide-ranging relief, including—in addition to the relief TaxAct has already agreed to (i.e., not enforcing the Updated Terms against any putative class members)—ordering TaxAct to provide putative class counsel with the names and email addresses of all putative class members, and to issue a Court-approved corrective notice to putative class members by emailing the corrective notice to all putative class members and posting a copy of the notice to its website. Such broad relief is unwarranted and inappropriate based on the posture of this case, where no class has been certified and may never be, and where TaxAct has already agreed not to use its Updated Terms to deprive any class member of his or her rights in the litigation. Indeed, one of Plaintiffs' cited authorities, *Friedman v. Intervet Inc.*, cautions against granting relief where, as here, no class has been certified. 730 F. Supp. 2d 758, 764 (N.D. Ohio 2010) (collecting cases) ("I find well taken the Eleventh Circuit's point that I should exercise restraint in acting prior to class certification . . . especially so where the general likelihood of certification of a [] class action is low."). Here, Plaintiffs say nothing about what they would tell putative class members, how they would make any such communication, or when they would do so. Given the absence of any clear justification for why Plaintiffs require the names and email addresses of all putative class members for any such communications, the concern articulated in *Friedman* that Plaintiffs may use this relief as a "disguised" mechanism to coerce TaxAct into a settlement is apparent. *Id*.

Moreover, TaxAct has not communicated, and has no intention to communicate, with putative class members concerning this litigation. Unlike other cases where courts have ordered the type of relief Plaintiffs are requesting, the Updated Terms do not mention the litigation, much less present a biased view of the present litigation. *See, e.g.*, *Hampton Hardware, Inc. v.*

*Cotter & Co.*, 156 F.R.D. 630, 632 (N.D. Tex. 1994) (holding that letters from the defendant to potential class members were improper because they actively discouraged participation in the lawsuit and claimed that participation would be inordinately expensive). Limiting TaxAct's communications is unnecessary and is not supported by any record that TaxAct has communicated with the putative class concerning this litigation. Thus, "a blanket prohibition against such communications, without requiring any proof and findings of specific need, [is] unauthorized by and [is] inconsistent with Rule 23." *Cada v. Costa Line, Inc.*, 93 F.R.D. 95, 98 (N.D. Ill. 1981); *see also Williams v. U.S. Dist. Court*, 658 F.2d 430, 435 (6th Cir. 1981).

Finally, Plaintiffs' request that TaxAct include a provision permitting users to opt out of the Updated Terms is also overbroad and unnecessary. In addition to the fact that the Updated Terms already contain an opt-out provision, *see* Background § II.A, *supra*, Plaintiffs do not limit their requested relief to the putative class but apply it seemingly to *all* TaxAct users (including regarding those who used TaxAct's Services outside of the class period), who Plaintiffs do not even purport to represent. Plaintiffs offer no justification for such a wide-ranging order, and none exists.

## CONCLUSION

For the foregoing reasons, TaxAct requests that the Court grant its Motion to Compel Arbitration (Dkt. No. 30) and deny Plaintiffs' Motion.

Dated: January 17, 2024

Respectfully submitted,

/s/ *James W. Ducayet*

James W. Ducayet (*pro hac vice*)
jducayet@sidley.com
Ankur Shingal (*pro hac vice*)
ashingal@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn

Chicago, IL 60603
Telephone: (312) 853 7000
Facsimile: (312) 853 7036

Tyson Y. Herrold (314262)
BAKER & HOSTETLER LLP
1735 Market Street, Suite 3300
Philadelphia, PA 19103
Telephone: (215) 564-3286
therrold@bakerlaw.com

*Attorneys for Defendant TaxAct, Inc.*

**CERTIFICATE OF SERVICE**

I, James W. Ducayet, certify that on this 17th day of January 2024, I caused the foregoing Response to Plaintiffs' Supplemental Brief in Opposition to Defendant's Motion to Compel Arbitration and Opposition to Plaintiffs' Motion for Protective Order under Fed. R. Civ. P. 23(d) to be filed on the Court's ECF system where it is available for viewing and downloading.

*/s/ James W. Ducayet*
James W. Ducayet