**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JAMES KIRKHAM and MATTHEW SESSOMS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TAXACT, Inc.,<br><br>Defendant. | : : : : : : : : : : : | Civil Action No.: 2:23-CV-3303-WB<br><br>**ECF CASE** |

**DEFENDANT TAXACT, INC.'S REPLY IN SUPPORT OF ITS EMERGENCY MOTION TO STAY THIS COURT'S FEBRUARY 12, 2024 ORDER REQUIRING AFFIRMATIVE INJUNCTIVE CONDUCT BY TAXACT (DKT .NO. 50) OR IN THE ALTERNATIVE, FOR RECONSIDERATION OF THE SAME**

## INTRODUCTION

TaxAct's Emergency Motion to Stay This Court's February 12, 2024 Order ("Emergency Motion") is premised on two realities: (1) TaxAct's posting of the Protective Order ("Order") on its website, without any context or explanation, will cause substantial customer confusion that will harm, rather than protect, the putative classes at issue in this case; and (2) the Order will create unnecessary conflicts with the advanced, nationwide settlement posture of *Smith-Washington v. TaxAct, Inc.*, Case No. 3:23-CV-00830-VC, where TaxAct intends to file a motion for preliminary approval for nationwide class settlement on February 23, 2024. Nothing in Plaintiffs' Counsel's Opposition undermines either point.

The Court should grant TaxAct's Emergency Motion.

## ARGUMENT

Emergency relief is required to avoid both substantial customer confusion that will cause irreparable harm to TaxAct, and unnecessary conflict with the first-filed *Smith-Washington* matter. Plaintiffs' Counsel's Opposition does not establish otherwise.

*First*, Plaintiffs' Counsel suggests that posting the Order on TaxAct's website will not cause confusion because it tracks the language that TaxAct stipulated to in this case. *See* Opp. at 4-5. But that ignores the difference between a legal document such as a court stipulation and a non-legal communication to putative class members. TaxAct prepared the stipulation pursuant to the Court's order to aid the Court in considering TaxAct's motion to compel arbitration. *See* Dkt. 41 (Court ordering that "if the parties are going to agree to a stipulation regarding this issue, it shall be filed on the docket"); Dkt. No. 42 (TaxAct's stipulation). The stipulation was *not* prepared in anticipation of it being provided directly to consumers, and thus does not use plain, easy to understand language that would be appropriate for consumers. Plaintiffs make no effort to address most of TaxAct's arguments, including that the Order does not include any defined

terms necessary for a layperson to understand what the Order is about. *See* Mot. at 2-3. Plaintiffs likewise do not engage with the fact that the Order can *only* apply to users within the class period, i.e., between January 2018 and November 23, 2022, based on the operative complaint in this matter. *See* Dkt. No. 27. If the Order was posted as written on the website, *every* customer would likely read the Order to apply to them, regardless of whether they used TaxAct's services in Pennsylvania or within the class period alleged in the operative complaint. For instance, current customers who never used TaxAct's products prior to 2023, and therefore who *cannot* be part of the putative classes, would likely be confused by the Order and could believe that it applies to them. Therefore, to the extent that the Court believes that any notice is required (and it should not be) the plain English statement TaxAct proposes would be easier for current customers to understand while also providing the appropriate putative class members with notice.

*Second*, the ad hominem accusation that TaxAct "[d]isregard[ed] the Court's Interim Class counsel Order" Opp. at 1, or acted with "contempt" for the Court, *id*. at 4, is inappropriate and baseless. So too is the innuendo that Plaintiffs' Counsel was somehow "excluded" from in the *Smith-Washington* settlement negotiations because TaxAct "preferred to negotiate with counsel representing the plaintiffs in the California Action…" Opp. at 2 n.1 (emphasis added). In fact, Plaintiffs' Counsel was invited to coordinate with *Smith-Washington*'s counsel—just as counsel in another pending matter, *Hartz v. TaxAct*, 1:23-cv-04591 (N.D. Ill.), opted to do. Plaintiffs' Counsel insisted that they be able to *separately* attend the already-planned mediation. The parties believed that the mediation would be more productive and efficient if the various Plaintiffs' Counsel coordinated among themselves rather than appearing separately. But when TaxAct invited Plaintiffs' Counsel to reach out to counsel in *Smith-Washington* to do just that,

they refused without explanation. Moreover, Plaintiffs' Counsel's accusation that TaxAct purposefully excluded them so that it could reach a global settlement that would be disadvantageous to any Pennsylvania putative class, Opp. at 2 n.1, is both untrue and especially offensive given that they have never even bothered to ask to review the settlement terms, and such settlement terms have not yet been publicly filed.

*Third*, Plaintiffs assert that because they have been appointed Interim Class Counsel, *Smith-Washington* counsel do not "stand on equal footing" with Plaintiffs' Counsel in this matter. Opp. at 4. Although they cite no caselaw in support of this claim, Plaintiffs' Counsel are nevertheless correct they are not on equal footing with *Smith-Washington*. In fact, *Smith-Washington* was filed six months ahead of this case, and is far more procedurally advanced, including with respect to the production of documents and depositions. Thus, if anything, it is *Smith-Washington* that should take precedence as the first-filed class action filed six months before this case. Notably, Plaintiffs' Counsel entirely ignore the case law from courts in this Circuit that demonstrate that courts routinely stay later-filed matters where a first-filed matter has reached a settlement, as is the case here. *See* Mot. at 6-7. Plaintiffs' Counsel's argument makes clear that their position amounts to nothing more than a brazen attempt to usurp the already-negotiated settlement.

*Fourth*, Plaintiffs' Counsel's claim that TaxAct overstates the importance of Judge Chhabria's stay order in *Smith-Washington* and that TaxAct incorrectly represented that Judge's Chhabria's order "stay[ed] all litigation against TaxAct," Opp. at 2-3, is also without merit. TaxAct never suggested that this Court's Order is affirmatively prohibited by Judge Chhabria's order. Rather, TaxAct simply indicated that the existence of the prior first-filed stay order, which encompasses the putative classes in this case, means that conflict between the orders in this case

and in *Smith-Washington* is likely. *See* Mot. at 6 (noting that orders from this case "potentially affect" the rights of class members in *Smith-Washington*, and vice versa). Critically, Plaintiffs fail to acknowledge that the putative classes here overlap with the classes in *Smith-Washington*, and do not dispute that likelihood of potential conflicting rulings from each court. And while Plaintiffs' Counsel relies on the *Manual for Complex Litigation* in their Opposition, they ignore the Manual's provisions relating to coordination between courts handling duplicative class action cases. Indeed, the *Manual for Complex Litigation* provides that conflicts between class action cases should be avoided and that "[i]n appropriate cases, a judge may order an action stayed pending resolution of a related case in a federal court." Manual Complex Litigation 4th ed., § 20.14. The undeniable overlap underscores the jurisdictional implications of this Court's Order on the first-filed *Smith-Washington* matter.

*Fifth*, and finally, Plaintiffs' Counsel's claims that TaxAct's proposed language is "problematic" because TaxAct omits the rationale for why the Updated Terms do not apply to the claims in this class action case. Opp. At 6. The rationale is that TaxAct made a voluntary decision not to apply those terms, a fact that is of no relevance to any putative class member. Nor does TaxAct's proposed language have any implications on what the Court has or has not determined with respect to the merits of Plaintiffs' claims in this case. Instead, it simply *refers* customers to the prior terms, which were undeniably the operative contractual terms in place in connection with the claims in this case. *See* Dkt. 54 at 9.

**CONCLUSION**

For the reasons stated above and in its underlying motion, the Court should grant TaxAct's Emergency Motion for a Stay and Reconsider its prior Order.

Dated: February 19, 2024

Respectfully submitted,

/s/ *James W. Ducayet*

James W. Ducayet (*pro hac vice*)
jducayet@sidley.com
Ankur Shingal (*pro hac vice*)
ashingal@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853 7000
Facsimile: (312) 853 7036

Tyson Y. Herrold (314262)
BAKER & HOSTETLER LLP
1735 Market Street, Suite 3300
Philadelphia, PA 19103
Telephone: (215) 564-3286
therrold@bakerlaw.com

*Attorneys for Defendant TaxAct, Inc.*

**CERTIFICATE OF SERVICE**

I, James W. Ducayet, certify that on this 19th day of February 2024, I caused the foregoing Reply in Support of Defendant's Emergency Motion to Stay this Court's February 12, 2024 Order Requiring Affirmative Injunctive Conduct by TaxAct (Dkt. No. 50), or in the Alternative, for Reconsideration of the Same to be filed on the Court's ECF system where it is available for viewing and downloading.

*/s/ James. W. Ducayet*
James W. Ducayet