**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JAMES KIRKHAM and MATTHEW SESSOMS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TAXACT, Inc.,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Civil Action No.: 2:23-CV-3303-WB<br><br>**ECF CASE** |

**DEFENDANT TAXACT, INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

## INTRODUCTION

In their Opposition, Plaintiffs do not dispute, as TaxAct has established, that if they assented to the Terms (which contain the Arbitration Agreement), an arbitrator must decide whether Plaintiffs' claims are subject to arbitration. Instead, Plaintiffs raise a number of other arguments. Most of them fail for the reasons stated in TaxAct's underlying motion. The handful of new arguments that Plaintiffs present fall short too. Specifically, Plaintiffs suggest that TaxAct has not proven that they entered contracts with TaxAct through acceptance of the Terms. Plaintiffs also assert that TaxAct waived its right to arbitrate by seeking preliminary approval of a nationwide class settlement in *Smith-Washington, v. TaxAct, Inc.*, Case No. 23-cv-830-VC (N.D. Cal.).

These arguments fail. The evidence establishes that Plaintiffs agreed to the Terms and, thus, to arbitration. Plaintiffs' heavy reliance on non-Texas contract law does nothing to change that analysis. Moreover, Plaintiffs' waiver claim is for the arbitrator to decide because of the validity of the delegation clause in the Arbitration Agreement. And even if the Court could consider the waiver argument, it is meritless. The Court should compel arbitration and stay this case pending arbitration of Plaintiffs' claims.

## ARGUMENT

### I. PLAINTIFFS DO NOT ESTABLISH THAT THEY DID NOT ASSENT TO THE TERMS.

#### A. The Terms Were a Clickwrap Agreement, and Plaintiffs Manifested Assent.

Where a valid delegation clause exists, as here, a "Court's inquiry is limited to the issue of whether a valid arbitration agreement exists"—*i.e.*, contract formation. *Coulter v. Experian Info. Sols., Inc.*, No. CV 20-1814, 2021 WL 735726, at *5 (E.D. Pa. Feb. 25, 2021); *accord MZM Constr. Co., Inc. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 397 (3d

Cir. 2020); *see also* Mem. in Supp. of Mot. ("Mot.") 7-10 (Feb. 16, 2024), Dkt. No. 55. Plaintiffs claim that the TaxAct Terms are a "browse-wrap" agreement and that there was no mutual assent between the parties. *See* Pls.' Opp'n to Mot. Compel at 4-17 (Feb. 27, 2024), Dkt. No. 70 ("MTC Opp."). Neither argument is correct.

First, the Terms qualify as a *clickwrap*, not a browsewrap, agreement. Plaintiffs do not dispute that they received notice of the hyperlinked Terms, which include the Arbitration Agreement, and *clicked* (the essence of clickwrap) "I agree to the TaxAct Terms of Service & Terms of Use [hyperlinked]" at account creation, and again when e-filing *each* tax year. Mot. at 5-6 (citing Decl. of Mark Jaeger in Supp. of Def. TaxAct, Inc.'s Mem. in Supp. of Mot. to Compel Arbitration & Stay Proceedings, Dkt No. 55-1) ("Jaeger Decl.") ¶¶ 6, 17-18 & Exs. F, H, J). That is sufficient to establish a clickwrap agreement. *See In re Online Travel Co.*, 953 F. Supp. 2d 713, 718 (N.D. Tex. 2013); *Jia v. Nerium Int'l LLC*, 3:17-CV-03057-S, 2018 WL 4491163, at *3 (N.D. Tex. Sept. 18, 2018) ("It is well established under Texas law that assent through an affirmative 'click' is sufficient to bind the parties."). Since the Terms here were conspicuously presented, and Plaintiffs assented by clicking the "I agree" checkbox to complete each online transaction to create an account and/or to file their taxes, the Terms are a valid clickwrap agreement.

Despite the Court's clear order that Texas law applies to the question of contract formation, Plaintiffs heavily rely on a case—*Berman v. Freedom Financial Network*, LLC, 30 F. 4th 849 (9th Cir. 2022)—involving contract formation under California or New York law (the Court did not decide, but primarily relied on California law authorities) to argue that the Terms are not click-wrap agreements. Even putting aside the non-applicability of California or New York law on contract formation here, *Berman* has no role to play here. To begin, unlike here, the

notice in *Berman* was "deemphasized" compared to the rest of the page due to the font color, size, and overall design of the webpage. *Id.* at 857; *see* Mot. at 14 (citing Jaeger Decl. ¶ 6, Ex. G at G-1). Moreover, unlike in *Berman*, TaxAct users must click a check box that explicitly states "I agree" to the hyperlinked Terms at multiple points, establishing adequate notice and manifestation of assent to the terms. *See Am. Eyewear, Inc. v. Peeper's Sunglasses & Accessories, Inc.,* 106 F.Supp.2d 895, 905 n. 15 (N.D. Tex. 2000) ("A 'clickwrap agreement' allows a consumer to assent to the terms of a contract by selecting an 'accept' button on the web site."); *see also* Mot. at 5-7. Finally, the Ninth Circuit has subsequently recognized that *even browsewrap agreements* are a sufficient basis for contract formation under California law, narrowing *Berman* in the process. *See Patrick v. Running Warehouse, LLC*, No. 22-56078, 2024 WL 542831, at *4 (9th Cir. Feb. 12, 2024) (finding notice sufficient and distinguishing *Berman* because the text disclosing the terms in *Patrick* was sufficiently conspicuous, as here).

Plaintiffs additionally claim—again relying on non-Texas law—that reasonable notice was not provided to users because there were slight differences in nomenclature used to identify the terms that a user would agree to versus the name of the Terms in the hyperlink: *i.e.*, "TaxAct Terms of Service & Terms of Use" versus "TaxAct Terms of Service and License Agreement." *See* Opp. 11-12. There is no legal authority, let alone Texas law, that assent is destroyed by some hypothetical confusion about what provisions a customer was agreeing to when such provisions were expressly hyperlinked and when both names contain "Terms of Service." Furthermore, the non-Texas law case Plaintiffs rely on—*Checchia v. Solo Funds*, No. 23-444-KSM, 2023 WL 3868369 (E.D. Pa. June 7, 2023)—has nothing to do with the argument Plaintiffs levy here. The *Checchia* court held a particular notice was inadequate because of the distance between the hyperlinked terms and the checkbox, and because a separate product's terms of service also

appeared on the same page, potentially causing confusion for a user. *Id*. at *9. Here, the checkbox hyperlinks the Terms directly and there are no other terms of service found on the page. In other words, it is clear that the hyperlinks in the account creation and e-filing checkboxes are in fact the "TaxAct Terms of Service and License Agreement."

Finally, even if this Court were to evaluate the Terms under a browsewrap analysis, Texas law holds such agreements are enforceable. *See Sw. Airlines Co. v. BoardFirst, L.L.C.*, No. 3:06–CV–0891–B, 2007 WL 4823761, at *5, 7 (N.D. Tex. Sept. 12, 2007) (holding that the defendant was bound to a browsewrap agreement and explaining that a browsewrap contract is binding when a website user has "actual or constructive knowledge of a site's terms and conditions prior to using the site."); *accord Patrick*, 2024 WL 542831, at *4 (finding browsewrap agreement sufficient based on conspicuous presentation of the terms). Here, for all the reasons shown, there is no basis for contending that the TaxAct website did not provide "actual or constructive" notice of the terms and conditions.

**B. The Terms Are Supported by Consideration and are Enforceable.**

Plaintiffs' argument that the Terms lack consideration and are illusory is wrong and is not supported by Texas law. Opp. at 5-7. "A lack of consideration occurs when a contract, at its inception, does not impose obligations on both parties." *Cheung-Loon, LLC v. Cergon, Inc.*, 392 S.W.3d 738, 747 (Tex. App. 2012); *see also Burges v. Mosley,* 304 S.W.3d 623, 628 (Tex. App. 2010). That is plainly not the case here, as customers agreed to be bound by the Terms, and TaxAct agreed to (and did) provide the customers its services. Further, mutuality of obligation for arbitration clauses specifically is not required under Texas law "so long as adequate consideration supports the underlying contract." *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 233 (Tex. 2008*); see also Sam Houston Elec. Coop., Inc. v. Berry*, 582 S.W.3d 282, 292 (Tex. App. 2017) ("[W]hen an arbitration clause is but one part of a larger underlying contract, the

required consideration can be provided by the rest of the parties' mutual obligations."); *Tex. Gas Util. Co. v. Barrett*, 460 S.W.2d 409, 412 (Tex. 1970) ("A contract will be construed in favor of mutuality. The modern decisional tendency is against lending the aid of courts to defeat contracts on technical grounds of want of mutuality.") (internal citations omitted).

*Nelson v. Watch House Int'l, L.L.C.*, 815 F.3d 190, 193 (5th Cir. 2016), which Plaintiffs cite in support of their claim that the Terms are illusory because TaxAct may allegedly unilaterally alter its agreement is arbitrate, is not to the contrary. Before TaxAct may alter the Terms, it must provide users explicit notice, "such as by sending an email, posting a notice on the Services or updating the date at the top of this Agreement." Jaeger Decl., Ex. G-2. Further, the modification is only valid if customers *choose* to continue use of TaxAct's services. *Id.* More importantly, Plaintiffs wholly ignore that they and putative class members can opt out of arbitration without penalty by exercising an option under the Arbitration Agreement.[1]

## II. ALL REMAINING DISPUTES ARE PROPERLY DELEGATED TO THE ARBITRATOR, AND PLAINTIFFS' WAIVER ARGUMENTS FAIL REGARDLESS.

### A. The Delegation Clause is Valid and Enforceable.

Plaintiffs do not dispute that there is a delegation clause, which substantially narrows the scope of this Court's review.[2] Nor do they dispute that the scope of the Arbitration Agreement is

---

[1] Plaintiffs' arguments about Matthew Sessoms not assenting to the Terms, *see* Opp. at 12-19, break no new ground and provide no meaningful rejoinder to TaxAct's arguments in its underlying Motion. Plaintiffs also inappropriately rely on non-Texas law throughout their argument. The only new point that the Opposition makes clear is that Matthew Sessoms gave his spouse, Krysta Sessoms, "permission to prepare [his] tax returns." Opp. at 13. That admission only strengthens TaxAct's contractual arguments and is fatal to his position that Krysta Sessoms' actions do not bind him to arbitrate his disputes.

[2] The delegation clause provides that "Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." JAMS Streamlined Rule 8(b).

a question about the "scope of the agreement under which Arbitration is sought" that the arbitrator is to decide. JAMS Streamlined Rule 8(b).

Instead, Plaintiffs inappropriately apply Texas state law to assert that JAMS arbitral rules cannot be incorporated into the Arbitration Agreement. But delegation is not a question of contract formation, so federal law applies—here, the Third Circuit's. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995); *see also Arnold v. Homeaway, Inc.*, 890 F.3d 546, 552 n.4 (5th Cir. 2018) ("Arnold's contention is that the substance of the [delegation] threshold itself is governed by Texas law, a proposition squarely refuted by the Supreme Court's explanation in *Kaplan*."). And the Third Circuit has affirmatively held that the incorporation of an arbitral body's rules containing a delegation clause "constitutes clear and unmistakable evidence that the [contracting] parties agreed to delegate arbitrability." *Richardson v. Coverall N. Am., Inc.*, 811 F. App'x 100, 103-04 (3d Cir. 2020) (concluding that delegation was "clear and unmistakable" where the parties incorporated by reference the AAA Rules). Courts in this district have also specifically held that "parties may 'clearly and unmistakably' delegate arbitrability issues to an arbitrator by incorporating by reference the American Arbitration Association ('AAA') or the ***Judicial Arbitration and Mediations Services [sic] ('JAMS') rules***". *Deardorff v. Cellular Sales of Knoxville, Inc.*, No. 19-cv-2642-KSM, 2022 WL 407396, at *8 (E.D. Pa. Feb. 9, 2022) (emphasis added).[3] The Parties unequivocally agreed to delegate all issues beyond contract formation in this case.

[3] The Fifth Circuit, like many of its sister circuits, applies the same rule under the FAA. *See Cooper v. WestEnd Capital Mgmt., L.L.C.*, 832 F.3d 534, 546 (5th Cir. 2016) (finding unmistakable evidence of intent to arbitrate arbitrability where the parties' agreement adopted the JAMS Rules); *Klebba v. Netgear, Inc.*, No. 1:18-CV-438-RP, 2019 WL 453364 (W.D. Tex. Feb. 5, 2019) (holding that the arbitration agreement contains a delegation clause because it incorporates the JAMS Rules).

**B. Plaintiffs' Argument About Waiver is For the Arbitrator to Decide and, In Any Event, Is Meritless.**

Plaintiffs' argument that TaxAct waived its right to arbitrate by settling a nationwide class action, *see* Opp. at 3-4, is an issue for the arbitrator—not this Court—to decide because of the delegation clause in the Terms. *See, e.g.*, *Coulter*, 2021 WL 735726 at *5 ("Consistent with the Arbitration Provision's Delegation Clause, this Court may not consider the parties' remaining arguments, including Plaintiff's arguments concerning the terms of the agreement and whether Defendant waived its right to arbitrate. Those issues are to be resolved by the arbitrator.") (internal citations omitted); *accord Cline v. Equifax Info. Servs., LLC*, No. 22-cv-02021, 2023 WL 3872392, at *3 (S.D. Ind. May 30, 2023) ("This language demonstrates the parties' intent to arbitrate even issues of substantive arbitrability that would otherwise be decided by a court. . . . Whether Experian delayed too long and therefore participated too much in this litigation before seeking arbitration is an issue of arbitrability." (internal citations omitted)); *Ewers v. Trans Union, LLC*, No. 22-cv-02474-RLY-MJD, 2023 WL 5435921 (S.D. Ind. Aug. 17, 2023) (same).[4]

Even if waiver is not delegated to the arbitrator, Plaintiffs' arguments are meritless. A waiver occurs where a party has ""intentional[ly] relinquish[ed] or abandon[ed] . . . a known right." *White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334, 339 (3d Cir. 2023) (quoting *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022)). "In analyzing whether waiver has occurred, a 'court focuses on the actions of the p[arty] who held the right' and is informed by the 'circumstances and context of each case.'" *White*, 61 F.4th at 339 (citations omitted).

---

[4] TaxAct acknowledges that there is a split of authority regarding whether waiver can be delegated and, if so, whether the JAMS Rule 8(b) sufficiently delegates waiver to an arbitrator. *See, e.g.*, *Liu v. Equifax Info. Servs., LLC*, No. 22-CV-10638-ADB, 2024 WL 308089, at *6 (D. Mass. Jan. 26, 2024), *appeal filed, Liu v. Experian Info. Solutions, Inc.*, No. 24-1118 (1st Cir. Feb. 6, 2024). TaxAct submits that the delegation clause in this case is sufficient because of its broad delegation of all issues to the arbitrator. Even if not, Plaintiffs' argument fails on the merits for the reasons stated in this brief.

Here, TaxAct has consistently asserted, from the very beginning of this matter, that all of Plaintiffs' claims are subject to arbitration. TaxAct made its position plain in the parties' Joint Report, filed mere days after this case was removed to this Court. *See* Dkt. No. 14 at 2. Since then, it has thrice moved to compel arbitration. *See* Dkt. Nos. 21, 30, and 55. Moreover, it has sought to stay all discovery in this matter in light of its motions, though it has complied with the Court's orders to engage in discovery. As such, there is no viable argument that the circumstances and context of this case suggest that TaxAct "intentionally relinquished" its right to arbitrate these Plaintiffs' claims. *Cf. White*, 61 F.4th at 338 (finding that Samsung waived its right to arbitrate where, unlike here, Samsung did not identify the arbitrability of the asserted claims in the discovery plan and moved to dismiss on merits, among other distinctions).

Plaintiffs do not engage with the circumstances of this case, but instead claim that TaxAct waived its right to arbitrate its dispute with Plaintiffs because TaxAct is simultaneously seeking preliminary approval of a nationwide class settlement in *Smith-Washington*. But they cite *no* Third Circuit law in their argument, nor do they provide any examples of courts finding waiver because of litigation decisions in a different case. They likewise do not identify any case law holding that a defendant is barred from choosing when and against whom to invoke arbitration. Instead, they rely on two out-of-circuit cases, both of which cut against their position. *See Vollmering v. Assaggio Honolulu, LLC*, No. 2:22-CV-00002, 2022 WL 6246881, at *1, *11-13 (S.D. Tex. Sept. 17, 2022) (finding no waiver and compelling arbitration), *report and recommendation adopted*, No. 2:22-CV-00002, 2022 WL 6250679 (S.D. Tex. Oct. 6, 2022); *Chun Ping Turng v. Guaranteed Rate, Inc.*, 371 F. Supp. 3d 610, 620 (N.D. Cal. 2019) (upholding defendant's right to arbitrate even though the defendant had moved to settle another overlapping class action, and explaining that to "hold that defendant can no longer assert its right

to compel arbitration simply because it did not assert that right in another case is ***absurd***") (citation omitted, emphasis added).[5]

Further, Plaintiffs gloss over the fact that TaxAct did not in fact waive its right to arbitrate the claims in *Smith-Washington*. Instead, TaxAct's motion to compel arbitration and stay proceedings is only stayed—and therefore remains pending—in that case. *See Smith-Washington, v. TaxAct, Inc.*, Case No. 23-cv-830-VC (N.D. Cal.), Docket. Nos. 107 (court's order stating that "All dates and deadlines are *stayed* in this case") (emphasis added). Further, the motion for preliminary approval of a nationwide class settlement is preliminary and non-final, pending approval from the Court. *See Smith-Washington*, Case No. 23-cv-830-VC, Dkt. No. 121. Indeed, the preliminary approval motion itself notes that TaxAct's "*pending* motion to compel individual arbitration of Plaintiffs' claims" presents the "most significant risk faced by Plaintiffs" in that case if the case is not ultimately settled. *See Smith-Washington*, Case No. 23-cv-830-VC, Dkt. No. 121 at 19 (emphasis added). If the settlement is not approved, the parties will revert back to the status quo in existence prior to the stay, and the Court will rule on the pending motion. *See Smith-Washington*, Case No. 23-cv-830-VC, Dkt. No. 121-2 at 32-33. As such, there is no argument that TaxAct has waived its right to arbitrate in *Smith-Washington*.

[5] Besides being baseless, the argument is also ironic. On the one hand, Plaintiffs are trying to rely on TaxAct's conduct *not* as to them but as to other named plaintiffs whose claims are pending in another court. On the other hand, Plaintiffs are attempting to persist with their claims—indeed opposing a stay based on the litigation in the first-filed court—despite that, whether or not those claims proceed in arbitration or in court, they will be released and therefore dismissed as a matter of law if and when the nationwide class settlement is approved in the other court.

## CONCLUSION

For the reasons set forth above and in TaxAct's opening brief, the Court should order that Plaintiffs' claims against TaxAct be addressed through individual arbitration pursuant to 9 U.S.C. section 4 and/or stay proceedings pending arbitration pursuant to 9 U.S.C. section 3.[6]

Dated: March 1, 2024

Respectfully submitted,

/s/ *James W. Ducayet*

James W. Ducayet (pro hac vice)
jducayet@sidley.com
Ankur Shingal (pro hac vice)
ashingal@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn Chicago, IL 60603
Telephone: (312) 853 7000
Facsimile: (312) 853 7036

Tyson Y. Herrold (314262)
therrold@bakerlaw.com
Telephone: (215) 564-3286
Jeffry W. Duffy (81670)
jduffy@bakerlaw.com
Telephone: (215) 564-2916
BAKER & HOSTETLER LLP
1735 Market Street, Suite 3300
Philadelphia, PA 19103

*Attorneys for Defendant TaxAct, Inc.*

[6] For preservation purposes, TaxAct maintains that a stay of discovery is appropriate during the pendency of this motion.

**CERTIFICATE OF SERVICE**

I, James W. Ducayet, certify that on this 1st day of March 2024, I caused the foregoing Reply in Support of Defendant's Reply in Support of its Motion to Compel Arbitration and Stay Proceedings to be filed on the Court's ECF system where it is available for viewing and downloading.

*/s/ James W. Ducayet*
James W. Ducayet