IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES KIRKHAM, on behalf of himself and all others similarly situated, and<br><br>MATTHEW SESSOMS, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TAXACT, INC.,<br><br>Defendant. | : | Civil Action No. 2:23-CV-3303-WB<br><br>Jury Trial Demanded |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION**

Defendant TaxAct, Inc. ("TaxAct") admits in its opposition papers that the Arbitration Agreement conferred on it "a unilateral right" to amend and terminate the Arbitration Agreement at any time. (ECF No. 88, pgs. 4-5). Under Texas law, that is more than enough to render TaxAct's Terms of Service and License Agreement ("Terms of Service") illusory and unenforceable. Plaintiffs Kirkham and Sessoms' Motion for Reconsideration should therefore be granted.

## ARGUMENT

TaxAct does not dispute that under Texas law, an arbitration provision that is part of a larger underlying contract "remains illusory if the contract permits one party to legitimately avoid its promise to arbitrate, such as by unilaterally amending or terminating the arbitration provision and completely escaping

arbitration." *Royston, Rayzor, Vickery, & Williams, LLP*, 467 S.W.3d 494, 505 (Tex. 2015); *see also Nelson v. Watch House Int'l*, 815 F.3d 190, 193 (5th Cir. 2016). TaxAct indeed acknowledges that "many of the cases in which Texas and Fifth Circuit courts have held that arbitration provisions are illusory are situations in which only one side has the ***unconstrained ability*** to back out of their promise to arbitrate[.]" (ECF No. 88, pg. 4 n.1) (emphasis added). That is the case here: only TaxAct has the unconstrained ability to avoid arbitration.

To avoid the clear conclusion that results from the application of Texas law, TaxAct conflates its users' rather limited right to opt out of the Arbitration Agreement with its unconstrained ability to to modify and terminate the Terms of Service altogether at any time. To be sure, TaxAct's users' limited opt-out rights are neither "unilateral" nor "unrestrained." *Cf. Royston*, 467 S.W.3d at 505-06 ("It does not allow either to unilaterally escape or modify the obligation to arbitrate covered claims"); *Lizalde v. Vista Quality Markets*, 746 F.3d 222, 225 (5th Cir. 2014) (citing *In re 24R, Inc.*, 324 S.W.3d 564, 566 (Tex. 2010)). To the contrary, the opt-out provision limits their right to "opt out of binding arbitration [to] thirty (30) days of the date you first accepted the terms of this Section[.]" (ECF No. 55-8, G-4). TaxAct moreover does not even allow users to opt out of arbitration at all if they had used TaxAct in a previous year. By no measure then do TaxAct's users have a "unilateral" and "unrestrained" right to opt-out, let alone the unconstrained ability to retroactively modify or terminate the Terms of Service.

In contrast to the limitations imposed on its users, TaxAct accorded to itself an unconstrained ability to retroactively terminate and modify the Terms of Service at any time whenever it wanted. Under the "Modifications" provision of the Terms of Service, TaxAct has "the right, at any time, to change the terms of this Agreement." Jaeger Decl., Exhibit G-2. The "Modifications" provision moreover allows TaxAct to "amend or modify the terms for any prior tax year" by simply including a statement in the updated terms of service that the updated terms of service amend or modify the "prior year terms[.]" *Id.* At any time then, TaxAct can unilaterally and retroactively free itself of any obligation to arbitrate by "posting a notice or updating the terms of this Agreement[.]" *Id.* Because of this unrestrained ability to terminate and modify the Terms of Service, the agreement is illusory under Texas law. *Cf. 24R, Inc.*, 324 S.W.3d at 568 (finding agreement not illusory because it stated that the "agreement to arbitrate . . . continues beyond, and is not affected by, a termination of employment"); *AdvancePCSHealth, L.P.*, 172 S.W.3d 603, 607 (Tex. 2005) (finding agreement not illusory because it contained a "survival" provision: "Notwithstanding the termination of this Agreement, . . . any obligations that arise prior to the termination of the Agreement shall survive such termination").

TaxAct's argument about "notice" fares no better because Texas law requires "advanced notice." *Royston*, 467 S.W.3d at 505 (citing *AdvancePCSHealth*, 172 S.W.3d at 607) (explaining that the Texas Supreme Court found the agreement in *AdvancePCSHealth* to be not illusory because it "obligated AdvancePCS to arbitrate

claims falling within the 30-day window even if it modified the clause"); *Nelson*, 815 F.3d at 194. Quite unlike the agreement in *AdvancePCSHealth*, which required 30 days advance notice, the "Modifications" provision in TaxAct's Terms of Service requires no advance notice at all. (ECF 55-8, G-2). TaxAct's Terms of Service thus lack a "savings clause," making them illusory under Texas law. *See 24R, Inc.*, 324 S.W.3d at 568 (citing *In re Halliburton Co.*, 80 S.W.3d 566, 573 (Tex. 2002) (explaining that in *Halliburton*, the Texas Supreme Court found that an arbitration agreement was not illusory because it contained a "savings clause," which included a 10-day notice provision and limited amendments to only prospective application); *Nelson*, 815 F.3d at 193-94 (articulating "three-prong test to determine whether a *Halliburton*-type savings clause sufficiently restrains an employer's unilateral right to terminate its obligation to arbitrate") (citing *Lizalde*, 746 F.3d at 226); *see also Harris v. Blockbuster, Inc.*, 622 F. Supp. 2d 369, 399 (N.D. Tex. 2009) (finding agreement illusory because there is nothing in it that "prevented Blockbuster from unilaterally changing any part of the contract other than providing that such changes will not take effect until posted on the website").

Having conceded that the Terms of Service grants TaxAct "a unilateral right" to modify and terminate the Terms, including the arbitration provision contained therein, TaxAct makes one final argument—without any supporting authority—that "there is no claim that TaxAct modified the Terms in any relevant respect during the putative Class Period[.]" (ECF No. 88, pg. 5). What TaxAct fails to appreciate is that an agreement can be found illusory regardless of whether the

party with the unilateral authority to modify or terminate the agreement has actually done so. *See Halliburton*, 80 S.W.3d at 569 (noting an agreement is "illusory and thus insufficient to support a bilateral contract because it would fail to bind the promisor ***who always retains the option*** of discontinuing employment") (quoting *Light v. Centel Cellular Co.*, 883 S.W.2d 642, 645 (Tex. 1994) (emphasis added). If a party can, like TaxAct here, "suddenly change the terms of the agreement to avoid arbitration, then the agreement [is] illusory from the outset." *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012); *see also Harris*, 622 F. Supp. 2d at 399-400 (explaining that an agreement can be found illusory even "where there was ***no attempt*** to apply a contract modification to prior events") (emphasis added).

In short, because TaxAct always retained the option to retroactively modify the Terms of Service without advance notice, the Terms of Service were illusory from the outset. Reconsideration is therefore appropriate here and TaxAct's Motion to Compel Arbitration should be denied.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that this Court grant their Motion for Reconsideration and deny TaxAct's Third Motion to Compel Arbitration.

Respectfully submitted,

COHEN, PLACITELLA & ROTH, P.C.

By: /s/ Eric S. Pasternack

James P. Goslee (#203043)
Michael Coren (#31037)
Eric S. Pasternack (#320127)
Jared M. Placitella (#321333)
2001 Market St., Suite 2900
Philadelphia, PA 19103
(215) 567-3500
jGoslee@cprlaw.com
mcoren@cprlaw.com
epasternack@cprlaw.com
jmplacitella@cprlaw.com

Dated: April 2, 2024

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES KIRKHAM, on behalf of himself and all others similarly situated, and | : | Civil Action No. 2:23-CV-3303-WB |
| MATTHEW SESSOMS, on behalf of himself and all others similarly situated, | : | Jury Trial Demanded |
| Plaintiffs, | : | |
| v. | : | |
| TAXACT, INC., | : | |
| Defendant. | : | |

**Certificate of Service**

I, Eric S. Pasternack, hereby certify that on the 2nd day of April 2024, on behalf of Plaintiff James Kirkham and Plaintiff Matthew Sessoms, I caused Plaintiffs' Reply Memorandum of Law in support of their Motion for Reconsideration to be filed and served via CM/ECF on all counsel of record in accordance with the Federal Rules of Civil Procedure.

By: /s/ Eric S. Pasternack
Eric S. Pasternack (#320127)

Dated: April 2, 2024