**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JAMES KIRKHAM et al.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**TAXACT, INC.,**<br>**Defendant.** | **CIVIL ACTION**<br><br><br><br>**NO. 23-3303** |

# ORDER

**AND NOW**, this 10th day of April, 2024, upon consideration of Plaintiffs' Motion for Reconsideration (ECF No. 83), Defendant TaxAct, Inc.'s Brief in Opposition thereto (ECF No. 88), and Plaintiffs' Reply in Support (ECF No. 89), Plaintiffs' Motion is hereby **DENIED**.[1]

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

______________________________

**WENDY BEETLESTONE, J.**

[1] Plaintiffs move for reconsideration of the portion of the Court's recent opinion holding that the arbitration provision contained in Defendant TaxAct, Inc.'s ("TaxAct") operative Terms of Service is not unenforceable for want of consideration. *Kirkham v. TaxAct, Inc.*, 2024 WL 1143481, at *6-7 (E.D. Pa. Mar. 15, 2024). Plaintiffs bring to the Court's attention to an opinion in which the Texas Supreme Court noted that "an arbitration provision remains illusory if the contract permits one party to legitimately avoid its promise to arbitrate, such as by unilaterally amending or terminating the arbitration provision and completely escaping arbitration." *Royston, Rayzor, Vickery & Williams, LLP v. Lopez*, 467 S.W.3d 494, 505 (Tex. 2015). This statement, Plaintiffs submit, carves out an exception to rule that, "when an arbitration clause is part of an underlying contract, the rest of the parties' agreement provides the consideration." *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex. 2005) (per curiam).

Assuming *arguendo* that this is a valid basis for reconsideration, *see Acosta v. Cent. Laundry, Inc.*, 273 F. Supp.3d 553, 555 (E.D. Pa. 2017), whatever limitation on *In re AdvancePCS Health*'s broader rule *Royston* articulates is inapposite here. The principle discussed in *Royston* is implicated only where the at-issue arbitration agreement "binds one party to arbitrate, while allowing the other to choose whether to arbitrate." *Royston*, 467 S.W.3d at 505. Here, however, the operative Terms of Service did no such thing because users retained the ability to opt out of any changes to the arbitration agreement that TaxAct might implement. First, upon creation of a TaxAct account, "[c]ustomers were advised that they could 'opt out of binding arbitration within thirty (30) days of the date you first accepted the terms of this Section by sending an email to [TaxAct].'" *Kirkham*, 2024 WL 1143481, at *2. Second, in the event that TaxAct did modify the Terms of Service, customers had to assent to those changes again, this time by continuing to use the website. *Id.* In neither case is a customer bound to arbitrate while TaxAct is not. *Royston*, 467 S.W. 3d at 505. Therefore, *Royston*'s rule is inapplicable here.